ROLL et al., Plaintiffs,

v.

BACON et al, Defendants.

2010-Ohio-5540.]

Court of Common Pleas,
Clermont County, Ohio.

No. 2008 CVH 1934.

Decided Aug. 2, 2010.

24

John C. Korfhagen, for plaintiffs.

Douglas W. Thomson Co., L.P.A., and Douglas W. Thomson, for defendants.

VICTOR HADDAD, Judge.

{¶ 1} This matter was before the court on October 2, 2009, for a court trial. Attorney John C. Korfhagen represented the plaintiffs, Jeffrey and Gina Roll, and attorney Douglas W. Thomson represented the defendants, Skip and Christine Bacon. The court took the matter under advisement and now renders the following decision.

## FINDINGS OF FACT

{¶ 2} This case involves a property dispute relating to a right of way dating back to 1860. There are nine separate claims in the complaint, but the parties have agreed to bifurcate the hearings so that the court will initially issue a declaratory judgment based upon the deeds, surveys, and testimony on the issue of the ownership of the strip of land subject to the right of way. Once that issue is decided, the parties will then proceed to trial, if necessary, on the remaining eight claims in the complaint.

{¶ 3} The parties have stipulated as to the admissibility of six joint exhibits but have not stipulated to their relevancy or interpretation. Those exhibits are as follows: the Roll property chain of title; the Bacon property chain of title; surveys by Jay Olberding, Richard Jasontek, and Paul Byrnside; two letters from attorney Paul Yelton; tax maps from 1944 to the present; and a survey of the Old Schoolhouse Lot, performed by John C. Hewitt. The parties also stipulated to the qualification of the surveyors in this case as experts in their field. In addition to the joint exhibits, as well as the exhibits presented by the plaintiffs and the defendants, the court heard testimony from James Goble, Jay Olberding, Jeffrey Roll, Gina Roll, Carl Ponder, Skip Bacon, and Richard Jasontek.

{¶ 4} *The Plaintiffs' Chain of Title*: The plaintiffs are the owners of real property located at 2998 State Route 133, Bethel, Ohio, in Clermont County. The chain of title to the plaintiffs' property began with a conveyance on January 25, 1860, from Samuel Sims and Eliza Sims of an 11–acre tract of land to W.H. Brown ("the Sims deed"). That deed was recorded April 30, 1860, and is located in Deed Book 72, page 256. To the best of the court's ability to read it, the legal description in that deed states as follows:

> [A]ll that parcel of land lying and being in the County of Clermont and State of Ohio, on the waters of Clover Lick Creek being part of the Survey entered in the name of Peter Casey No. 572, and Patented to G.T. Cotten[1] and bounded and described as follows (to wit): Beginning on the east side of the road leading from Bethel to Williamsburg Corner to John Reed thence with the road and Reed's line South 55 degrees West 44 poles to a stone in the original line; thence 31 degrees West 40 poles to a stone; thence 44 poles running parallel with the first line; thence North 32 degrees West 40 poles to a stake at the Beginning, Containing Eleven (11) acres more or less.

{¶ 5} Also contained within the Sims deed is the reservation of a right of way. The deed provides that Sims was "[r]eserving the right of way along Smith's line to the Williamsburg road."[2] According to testimony, this right of way is located to the east side of the plaintiffs' property. All deeds in the plaintiffs' chain of title, except the plaintiffs' deed, contain an acknowledgement that all of the plaintiffs' predecessors in interest owned their land subject to a right of way. The plaintiffs' deed did not contain such an acknowledgement, but the court finds that this omission of the right of way reservation is of no legal consequence, since the LaMont and Linda Baudendistal deed clearly contained such an acknowledgement.

{¶ 6} The following is the plaintiffs' chain of title, beginning with the conveyance from Samuel Sims and Eliza Sims to W.H. Brown.[3]

---

**1.** The court notes that other deeds in the chain of title refer to J.C. Cotton. The court is unable to determine from the deed the appropriate spelling of the name; therefore, the court interpreted the name to the best of its abilities.

**2.** Id.

**3.** On many of the deeds contained in Stipulated Exhibit 1, the Deed Book volume cannot be found on the copies provided to the court. Some of the page numbers have been cut off in the copying process. Therefore, for purposes of this decision, when one or both of those items are not on the particular deed in question, the court will rely on the index to Stipulated Exhibit 1. Otherwise, the court will rely on the information provided in the deeds themselves. Many of the dates contained within the index to Stipulated Exhibit 1 were incorrect; thus, the court corrected those dates and used, when possible, the date of recording.

1. Samuel Sims and Eliza Sims to W.H. Brown, located in Deed Book 72, page 256, and recorded on April 30, 1860.

2. William H. Brown and Josephine Brown to W.E. Brown, located in Deed Book 136, page 263, and recorded on July 23, 1895.

3. W.E. Brown to Walter Beckelhimer, located in Deed Book 142, page 527, and recorded on July 6, 1899.[4]

4. Walter Beckelhimer to William Deel et al., located in Deed Book 153, page 126, and recorded on September 17, 1903.[5]

5. William Deel et al. to James Widmeyer, located in Deed Book 166, page 126, and recorded on December 20, 1909.[6]

6. James Widmeyer, deceased, to his heirs, through probate in Clermont County Probate Court.

7. James Widmeyer, by executors, to Edwin Ellsberry, located in Deed Book 169, page 115, and recorded on September 28, 1915.[7]

8. Charles Widmeyer et al., as heirs to James Widmeyer, to Edwin Ellsberry, located in Deed Book 178, page 448, and recorded on June 8, 1916.[8]

9. Edwin Ellsberry et al. to Raymond A. McKibben, located in Deed Book 191, page 95, and recorded on February 21, 1921.

10. Raymond A. McKibben et al. to Charles A. Gerold et al., located in Deed Book 198, page 288, and recorded on September 22, 1924.

---

4. The index provides that this deed was recorded on July 5, 1899. However, the court finds, upon reviewing the text of the deed, that it was presented for recording on that date but was not recorded until July 6, 1899. For purposes of this decision, the court will use the date the instrument was recorded, when possible.

5. The fourth deed provided in Stipulated Exhibit 1 is actually a conveyance from Walter Beckelhimer to William Deel et al., and not a conveyance from Walter Beckelhimer to James Widmeyer, as stated in the index to Stipulated Exhibit 1.

6. The court, noticing that the index did not match the deed provided, performed its own title search and takes judicial notice, pursuant to Evid.R. 201, that William Deel conveyed the property to James Widmeyer on Dec. 20, 1909, as this is a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

7. The deed book and page number are incorrectly stated in the index to Stipulated Exhibit 1.

8. The second conveyance to Edwin Ellsberry appears to have occurred because not all the heirs to James Widmeyer signed the first deed. Instead, only Omar Mattox and Lawrence Widmeyer, as executors, signed the first deed; therefore, a second deed was recorded that included all heirs of James Widmeyer. Although the index to Stipulated Exhibit 1 speaks to the heirs of James Widmeyer, the deed specifies Charles Widmeyer et al. as heirs to James Widmeyer.

11. Charles A. Gerold and Jessie A. Gerold to E.A. Day, located in Deed Book 206, page 453, and recorded on January 17, 1928.

12. Irma Day to John F. Pinson and Mary Pinson, located in Deed Book 239, page 119, and recorded on September 30, 1941.

13. John F. Pinson and Mary Pinson to George Demaris and Thelma Demaris, located in Deed Book 248, page 84, and recorded on February 21, 1944.

14. George Demaris and Thelma Demaris to W.H. Finley, located in Deed Book 254, page 175, and recorded on September 15, 1945.

15. W.H. Finley to Philip L. Hutson et al., located in Deed Book 253, page 434, and recorded August 26, 1946.

16. Philip L. Hutson et al. to Henry Rose, located in Deed Book 253, page 439, and recorded on August 27, 1946.

17. Henry Rose to William Sickenger and Katherine Sickenger, located in Deed Book 278, page 225, and approved for transfer on February 14, 1950.[9]

18. William Sickenger and Katherine Sickenger to J.J. Batchelor and Grace Batchelor, located in Deed Book 377, page 124, and transferred on October 31, 1959.[10]

19. J.J. Batchelor and Grace Batchelor to Jerry M. White and Lynn White, located in Deed Book 463, page 273, and recorded on April 30, 1968.

20. Jerry M. White to Lynn White, located in Deed Book 477, page 361, and recorded on July 24, 1969.

21. Lynn White and Jerry M. White to LaMont Baudendistel and Linda Baudendistel, located in Deed Book 499, page 598, and recorded on August 11, 1971.

22. LaMont Baudendistel and Linda Baudendistel to Jeffrey A. Roll and Gina M. Roll, located in Official Record 744, page 180, and recorded on August 5, 1987.

23. Jeffrey A. Roll and Gina M. Roll to Jeffrey A. Roll and Gina M. Roll, located in Official Record 2137, page 782, and recorded on August 8, 2008.

{¶ 7} *The Defendants' Chain of Title*: The defendants are the owners of real property located at 3000 State Route 133, Bethel, Ohio, in Clermont County. On March 21, 1860, Samuel Sims and Eliza Sims conveyed 32 acres and 140 poles to

---

9. The court was not given the full copy of this particular deed, thus the recorded date is not included on the court's copy. Therefore, the court used the next date stamped on the deed, which is the "approved for transfer" date.

10. Again, the court was given an incomplete copy, thus it used the actual date of transfer, and not the recorded date, for this particular transfer.

A.E.L. Bess. This deed was recorded in Deed Book 76, page 161, of the Clermont County, Ohio deed records, on July 24, 1862 ("the Bess deed"). Further, Samuel Sims and Eliza Sims assigned and conveyed their reserved right of way to A.E.L. Bess. The deed contains the following language pertaining to the right of way: "I assign my right of way which I have reserved in W.H. Brown's Deed from the corner of Bess and Brown along the line of Smith and Brown to the Williamsburg Road." Additionally, Sims conveyed three more acres to Bess in a deed recorded in Deed Book 80, page 324, of the Clermont County, Ohio deed records on October 21, 1864.

{¶ 8} The following is the defendants' chain of title, beginning with the conveyance from Samuel Sims and Eliza Sims to A.E.L. Bess.[11]

1. Samuel Sims and Eliza Sims to A.E.L. Bess, located in Deed Book 76, page 161, and recorded on July 24, 1862.

2. Samuel Sims and Eliza Sims to A.E.L. Bess, an additional three acres, located in Deed Book 80, page 324, and recorded on October 21, 1864.

3. A.E.L. Bess and Jane Bess to Hiram M. Beck, located in Deed Book 90, page 106, and recorded on February 5, 1869.

4. Heirs of Beck to C.W. Jordan et al., located in Deed Book 156, page 606, and recorded on March 13, 1906 (deed for right of way).

5. Heirs of Beck to C.W. Jordan et al., located in Deed Book 156, page 607, and recorded on March 14, 1906 (all property, including the reserved right of way).[12]

6. J.L. Jordan to John P. Hughes, located in Deed Book 175, page 1, and recorded on February 26, 1914 (first deed to refer to third tract without right of way).

7. John P. Hughes to Edward A. Swope, located in Deed Book 186, page 273, and recorded on August 27, 1919.

8. E.A. Swope to George Lambert and Charlotte Lambert, located in Deed Book 186, page 317, and recorded on September 9, 1919.

---

11. Many of the deeds contained in Stipulated Exhibit 2, the Deed Book volume cannot be found on the copies provided to the court. Some of the page numbers have been cut off in the copying process. Therefore, for purposes of this decision, when one or both of those items are not on the particular deed in question, the court will rely on the index to Stipulated Exhibit 2. Otherwise, the court will rely on the information provided in the deeds themselves. Many of the dates contained within the index to Stipulated Exhibit 2 were incorrect; thus, the court corrected those dates and used, when possible, the date of recording.

12. The recorded date is not contained within the court's copy of this deed. Therefore, the court will rely on the index to Stipulated Exhibit 2 for this date.

9. George E. Lambert et al. to William T. Greear et al., located in Deed Book 197, page 91, and recorded on October 17, 1923.

10. William T. Greear et al. to Mike Bywater et al., located in Deed Book 198, page 80, and recorded on June 10, 1924.

11. Mike Bywater and Elizabeth Bywater to Maggie E. Patton, located in Deed Book 202, page 18, and recorded on October 12, 1925.

12. Maggie E. and Charles E. Crutchfield (formerly Maggie E. Patton) to Nydia H. Leeds, located in Deed Book 214, page 138, and recorded on January 23, 1931.

13. Nydia H. Leeds to Lou Hall, located in Deed Book 249, page 492, and recorded on October 19, 1944.

14. Lou Hall to Albert John Schott and Marabeth Schott, located in Deed Book 254, page 174, and recorded on September 15, 1945.

15. Albert John Schott and Marabeth Schott to Hargis H. Coffee and Mae Coffee, located in Deed Book 287, page 426, and recorded on May 23, 1951.

16. Hargis H. Coffee and Mae Coffee to Cecil Bolling and Laura Bolling, located in Deed Book 338, page 588, and recorded in July 1956.[13]

17. Laura L. Bolling to Cecil Bolling, located in Deed Book 433, page 234, and recorded on March 11, 1965.

18. Cecil Bolling to Thomas Luce and Barbara Luce, located in Deed Book 511, page 83, and recorded on June 14, 1972.

19. Thomas Luce and Barbara Luce to Gregory Downes, located in Deed Book 745, page 792, and recorded on September 8, 1987.

20. Gregory Downes to Charles Lambert and Karen Lambert, located in Official Record 393, page 353, and recorded on September 9, 1993.

21. Charles Lambert and Karen Lambert to Dale James Hunt, located in Official Record 1003, page 270, and recorded on January 9, 1998.

22. James J. Hunt, administrator of the estate of Dale James Hunt, to Skip Bacon and Christine Bacon, located in Official Record 1238, page 255, and recorded on November 23, 1999.

23. A series of deeds from Bacon to SCI or SCI to Bacon, creating seven tracts of land consisting of five acres each.

 a. Tracts 1–7: Official Record 1353, pages 1411–1422, and recorded on June 26, 2001.

---

**13.** The recorded date on this deed is not entirely legible; thus, the court cannot discern the exact date of recording.

 b. Corrected deeds for tracts 1–7: Official Record 1593, pages 1478–1487, and recorded on March 24, 2003; Official Record 1593, pages 2458–2460, and recorded on March 25, 2003; Official Record 1595, page 1380, and recorded on March 27, 2003.

 c. SCI to Christine Bacon: Official Record 2043, page 1701, and recorded on March 6, 2007.

{¶ 9} *The Dispute*: This case involves a dispute over the ownership of the 14–foot right of way reserved in the Sims deed. Over the years, all parties and their predecessors in interest have used the right of way at issue for ingress and egress to the adjoining properties. The defendants' predecessor in interest, Gregory Downes and Rima Downes, installed a one-inch water line under the center of the private drive. After the property was conveyed to Charles Lambert and Karen Lambert, the water line burst and was eventually moved, with permission, to the ditch owned by the plaintiffs. After this, the private drive was used only for ingress and egress until the defendants constructed a sewer line in the area of the private drive. According to the testimony of Gina Roll, the defendants requested permission from the plaintiffs to install the sewer line on their property. In order to determine the proper procedure for granting the defendants an easement on their property, Mrs. Roll contacted her professor, William A. Stearns, in October 2004. The defendants then began to construct a water line within that same area, and the current lawsuit was filed. While this lawsuit was pending, the defendants completed the water line.

{¶ 10} Prior to the filing of this lawsuit, each party performed acts toward maintaining the right of way. These acts include, among other things, snow removal, placing gravel on the private drive, and removal of weeds along the side of the private drive. According to the testimony of James M. Goble, Jeffrey Roll, Carl Ponder, and Skip Bacon, both Mr. Roll and Mr. Bacon took actions to maintain the right of way in question. The defendants have submitted receipts to show the improvements to the private drive and the expenditures related thereto. There is also evidence to indicate that a large tree was removed without the plaintiffs' permission. The plaintiffs submitted photographs to the court of the private drive, including photos of survey stakes placed to show the boundaries of the right of way. Additionally, the defendants paid the property tax on the private drive. Having considered all of this evidence, the court finds as follows.

## LEGAL STANDARD

{¶ 11} Declaratory judgment actions are governed by R.C. 2721.01 et seq. Pursuant to that statute, this court has the authority to determine the legal rights and obligations of the parties to this action. An action for declaratory judgment provides a means for the parties to eliminate existing uncertainty about

their legal rights and obligations. *Knowles v. Krebs,* Erie App. No. E–08–023, 2009-Ohio-774, 2009 WL 426397, ¶ 38, citing *Travelers Indem. Co. v. Cochrane* (1951), 155 Ohio St. 305, 312, 44 O.O. 302, 98 N.E.2d 840. "Although broad in scope, the declaratory judgment statutes are not without limitation. Most significantly, in keeping with the long-standing tradition that a court does not render advisory opinions, they allow the filing of a declaratory judgment only to decide 'an actual controversy, the resolution of which will confer certain rights or status upon the litigants.' " *Mid–Am. Fire & Cas. Co. v. Heasley,* 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 9, quoting *Corron v. Corron* (1988), 40 Ohio St.3d 75, 79, 531 N.E.2d 708. See also *Graceworks Lutheran Servs. v. Hamilton,* Butler App. Nos. CA2007–01–015, CA2007–01–030, 2007-Ohio-6167, 2007 WL 4099509, ¶ 16.

{¶ 12} In this case, there is no dispute that a declaratory judgment is the appropriate means by which to proceed, since an actual controversy exists due to a dispute over the ownership of a certain right of way. The resolution of this issue will confer certain rights or status upon the litigants, because the court is being asked to determine who owns the property at issue. Therefore, the court finds that a declaratory judgment action is appropriate in this case.

## LEGAL ANALYSIS

■ {¶ 13} There have been multiple surveys performed in this case. Each of the surveys performed used a line within inches of the others to mark the western boundary of the property to the immediate east of that property owned by the plaintiffs and the defendants. In other words, these surveys use a similar line to mark the western boundary of the Old Schoolhouse Lot.

{¶ 14} The Lansdale survey, performed by Jay Olberding and recorded at TL 87–0075, locates the westernmost line of the properties immediately to the east of the Roll and Bacon properties as being at S 32° 26' 31" E. This survey indicates that the right of way in question belongs to the plaintiffs. The Jasontek survey, recorded at TL 65–0001, locates that same line at S 32° 26' 21" E. Richard Jasontek indicated that the length of this line is within inches of the finding of Olberding. The Byrnside survey, recorded at TL 19–0095, locates that line at S 32° 26' 21" E. Additionally, the parties submitted a survey by John C. Hewitt, of H & M Surveying, which is a survey of the Old Schoolhouse Lot, which borders the plaintiffs' property. In that survey, Hewitt also finds that the westernmost line of the Old Schoolhouse Lot, or the easternmost line of the plaintiffs' property, is located at N 32° 26' 31" W. This coincides with the location of that line as determined by Olberding.

{¶ 15} When determining property boundary disputes, " '[i]t is well settled that monuments are of prime importance in settling boundary disputes. * * * A 'monument' is a tangible landmark, and monuments, as a general rule, prevail over courses and distances for the purpose of determining the location of a boundary, even though this means either the shortening or lengthening of distance, unless the result would be absurd and one clearly not intended, or all of the facts and circumstances show that the call for course and distance is more reliable than the call for monuments. * * * Generally, in determining boundaries, natural and permanent monuments are the most satisfactory evidence and control all other means of description, in the absence of which the following calls are resorted to, and generally in the order stated: First, natural boundaries; second, artificial marks; third, adjacent boundaries; fourth, course and distance * * *. Area is the weakest of all means of description. * * * The reason assigned for this rule is that monuments are considered more reliable evidence than courses and distances.' " *Rader v. Skeene,* Clermont App. No. CA2008–01–001, 2008-Ohio-5666, 2008 WL 4767076, ¶ 20, quoting *Broadsword v. Kauer* (1954), 161 Ohio St. 524, 533–534, 53 O.O. 395, 120 N.E.2d 111. See also *Berry v. Mullins,* Butler App. No. CA2006–07–173, 2008-Ohio-1475, 2008 WL 842484, ¶ 17. This standard, however, is not a rigid rule that must be followed blindly in every situation. *Bart v. Hughes,* Clermont App. No. CA2002–02–016, 2002-Ohio-5452, 2002 WL 31261552, ¶ 11. The order of criteria is, instead, a general rule and not a rigid, inflexible one. Id. at ¶ 15.

{¶ 16} Olberding testified that he found a stone that was referred to in the deeds on the southwest corner of the Roll property. This stone is also referred to on Jasontek's survey and on the Byrnside survey. This is the extent of the natural monumentation; however, Olberding also found artificial markings composed of four existing pins marking the corners of the old Schoolhouse Lot and four existing pins left by Byrnside. Additional marking referred to in Olberding's survey as well as in the Byrnside survey is an old wire fence along the property line between the Roll property and the Bacon property. Upon reviewing the surveys, the court notes that the Jasontek survey, the Byrnside survey, and the Hewett survey all conclude that the defendants own the land constituting the right of way, while the Olberding survey concludes that the plaintiffs own the land. The court further notes that neither Byrnside nor Hewett testified; therefore, there is no evidence in the record to indicate the research they did on the properties prior to performing their surveys.

{¶ 17} The court finds that the surveys conducted by Jasontek, Byrnside, and Hewett do not reflect the intent of the grantor, as evidenced by the chains of title. In the original deed from Sims to Brown, dated April 30, 1860, the grantor states that the property is conveyed "[r]eserving the right of way along Smith's

line to the Williamsburg road." From this, the court finds that Sims intended to convey the property with a reservation of a right of way along Smith's line, which became the Old Schoolhouse Lot.

{¶ 18} This specific language remained in all deeds in the plaintiffs' chain of title until September 1903, when Beckelhimer conveyed the property to Deel. The language was then changed to read "except a reserve of a right of way along Smith's line." The court finds that the change in language does not affect the fact that the property was conveyed with the reservation of a right of way along Smith's line.

{¶ 19} This specific language in the conveyance from Beckelhimer to Deel was present in all deeds from that point until the property was conveyed from Irma Day to John F. Pinson and Mary Pinson, in a deed recorded on September 30, 1941. In that deed, Irma Day conveyed the property "except the reserve right-of-way leading to lands of Lydia Leeds, formerly Beck." The land of Lydia Leeds, formerly Beck, is the land eventually acquired by the defendants; therefore, the deed reserved a right of way across what became the plaintiff's property to what became the defendant's property. Although the language in the deed may have changed, the intent of the original grantor, Sims, to convey the property subject to a reserved right of way across the plaintiff's property and connecting the defendant's property to the main road is clearly reflected in the language so chosen. The same remains true for the reservation contained in the deed from W.H. Finley to Philip L. Hutson, recorded August 26, 1946. The only difference in the language used is that the name Lou Hall replaces that of Lydia Leeds, since Lydia Leeds had conveyed her interests in the defendants' property to Lou Hall.

{¶ 20} When Hutson conveyed the property to Henry Rose, by deed recorded August 27, 1946, the right-of-way language again changed. In that deed, the grantor conveyed the property "subject to rights heretofore granted for a private right of way *within* the tract and along the easterly boundary thereof." (Emphasis added.) This language clearly reflects the intent of Sims to convey the property subject to a right of way across the plaintiffs' property. The language also clearly shows that the right of way is along the eastern boundary of the plaintiffs' property and *within* the boundaries of the property eventually acquired by the plaintiffs. This language is contained in all deeds from that point through the deed recorded from Lynn and Jerry White to La Mont and Linda Baudendistel on August 11, 1971.

{¶ 21} The Baudendistels then conveyed the property to the plaintiffs by a general warranty deed recorded on August 5, 1987. That particular deed does not specifically contain the reservation of the right of way, but it does say that the conveyance is subject to easements and restrictions of record. The reserva-

tion of the right of way is clearly contained in the plaintiffs' chain of title; thus, the plaintiffs acquired the property subject to the right of way that crosses the eastern boundary of their property and that is contained *within* their property.

{¶ 22} The court finds, however, that the intent of the grantor was lost within the defendants' chain of title; and this is, perhaps, the reason that the surveys concluding that the defendants own the land do not echo the intent of the original grantor, Sims. The original deed in the defendants' chain of title was from Sims to Bess and was recorded on July 24, 1862. In that deed, Sims stated, "I assign my right of way which I have reserved in W.H. Brown's Deed from the corner of Bess and Brown along the line of Smith and Brown to the Williamsburg road." From this, it is evident that the right of way begins at the property line between Brown's lot and Bess's lot and runs along the line of Smith and Brown to Williamsburg Road. Therefore, in the original deed, the right of way was to begin at the corner of Bess's lot, which indicates that Bess's property ended where the right of way began. It would then run along Brown's property, which eventually became the plaintiffs' property, to the main road. From this, the court finds that the intent of Sims in the Bess deed was to convey the Bess property with an assignment of the use of the right of way across the Brown property. This specific language is also used in the deed from Bess to Beck, recorded on February 5, 1869.

{¶ 23} The confusion in the defendants' chain of title appears to have arisen on March 13, 1906, when Beck conveyed a "tract or strip of land for a Right–of–Way" to C.W. Jordan (the "first" deed). That deed appears to indicate, at first glance, that Beck owned the property outright. However, Beck then conveyed two other tracts of land to Jordan in a separate deed (the "second" deed). This second deed contained the same language as that in the Sims deed to Bess, thus evidencing the true intent of the original grantor to reserve a right of way across the property. Upon reviewing the first deed for the "tract or strip of land for a Right–of–Way," the court finds that Beck did not intend to convey fee simple title in the strip of land but instead made a conveyance of the use of a right of way across the adjoining property. This is evidenced by the language used, i.e., "for a Right–of–Way"

{¶ 24} However, many of the deeds subsequent to the March 1906 deed dropped the "right-of-way" language, and they appear to convey fee simple title to the 14–foot tract of land. This "third tract of land" appears in the conveyance from Jordan to Hughes, recorded February 26, 1914, and continues through the conveyance from Luce to Downes, recorded September 8, 1987. The language contained within the Sims-to-Bess deed regarding the assignment of the right of way across the Brown property is not included in many of those deeds. However, the deed conveying the property from Coffee to Bolling, recorded in July

1956, the deed conveying the property from Luce to Luce, recorded in June 1972, and the deed conveying the property from Luce to Downes, recorded in September 1987, states: "Third Tract: The following tract or strip of land for a right of way out to the Williamsburg and Bethel Pike."

{¶ 25} The language previously cited regarding the Sims deed as well as the third tract of land is not referred to in the deed from Downes to Lambert. However, that deed, recorded September 9, 1993, states that the conveyance is subject to all easements and restrictions of record. Further, in Exhibit A to the deed, the grantor, Downes, seems to combine all three tracts of land previously conveyed by Beck in 1906. Therefore, that deed reflects that the defendants' predecessors in interest owned the land that includes the right of way. This legal description continues through the conveyance to the defendants in November 1999.

{¶ 26} Upon review of the defendants' chain of title, it would appear that unless the surveyors reviewed the deeds all the way back to at least March 1906, when Beck conveyed the property to Jordan, the surveyors could have concluded that the defendants owned the property. Since many of the subsequent purchasers viewed the conveyance in the first deed in 1906 as a conveyance of a fee simple interest rather than a conveyance of right of way, many of the deeds in the defendants' chain of title indicate that the defendants own the property. The fact that the 1906 deed placed the right of way into a third tract of land resulted in confusion as to the true ownership of the property. Upon reviewing the language of that deed, the court finds that the intent of the grantor was clearly to convey a right of way and not a fee simple interest.[14]

{¶ 27} The letters from Paul Yelton to the plaintiffs and to Olberding further bolster the court's finding that the intent of the original grantor, Sims, was to convey the plaintiffs' property subject to the adjoining landowners' use of the easterly line as a right of way to the Williamsburg Road. At the plaintiffs' request, Yelton performed a marketable-title examination, pursuant to R.C. 5301.47 et seq., of both the plaintiffs' property and the defendants' property. The Marketable Title Act provides: "Any person having the legal capacity to own land in this state, who has an unbroken chain of title of record to any interest in land for *forty years* or more, has a marketable record title to such interest * * *." (Emphasis added.) R.C. 5301.48. "'Marketable record title' means a title of record * * * which operates to extinguish such interests and claims,

---

14. There were three separate deeds in the defendants' chain of title that conveyed a reservation of a right of way. The remaining deeds in the defendants' chain of title appeared to convey a fee simple interest in the strip of land at issue; therefore, the court had to go beyond the 40 year root of title to determine the true intent of the grantor and to resolve the confusion in the defendants' chain of title.

existing prior to the effective date of the root of title * * *." R.C. 5301.47(A). " 'Root of title' means that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined. The effective date of the 'root of title' is the date on which it is recorded." R.C. 5301.47(E). Therefore, when Yelton performed his marketable title exam of the properties in question, he had to go back only 40 years in order to find the root of title for each of the properties.

{¶ 28} The reservation of a right of way across the plaintiffs' property existed in the plaintiffs' root of title and continued throughout. However, the conveyance of the third tract of land in the defendants' chain of title confused the defendants' chain of title to the point that Yelton had to go beyond the defendants' root of title to determine the intent of the grantor. The problem with the defendants' chain of title occurs because many of the deeds beginning with the defendants' root of title appear to convey a fee simple interest in the third tract of land. However, consistent with the court's prior determination, Yelton determined that there were two deeds within the chain of title that referred to the third tract of land as a right of way. Therefore, Yelton had to go beyond the 40–year root of title to determine the intent of the grantor that created the third tract of land in an effort to determine whether the deeds containing the "right-of-way" language were accurate or whether the deeds conveying a fee simple interest were accurate. The deed that created the third tract of land is the March 1906 deed from Beck to Jordan. Yelton determined, as the court did, that the intent of the grantor in conveying a "Third Tract" of land was to convey the right to use the right of way across the plaintiffs' property and that the grantor did not intend to convey a fee simple interest in that property. It was Yelton's conclusion, therefore, that the plaintiffs were the owner of the property in question and that the defendants had a limited right to use the property for a right of way from their property to State Route 133. This evidence is consistent with the court's previous finding when it analyzed both the plaintiffs' and the defendants' chains of title.

{¶ 29} Based upon the foregoing, the court hereby finds that the plaintiffs have proven by a preponderance of the evidence that they are the owners of the property subject to the right of way in question. The court finds that the defendants have a limited use of the property for a right of way to State Route 133. The defendants, however, have asserted several affirmative defenses that could divest the plaintiffs of title to the property in question.[15]

---

15. The defendants did not argue that they were bona fide purchasers for value; however, had that argument been made, the court finds that based upon the marketable-title search of the

44

**FIRST AFFIRMATIVE DEFENSE:**

**ADVERSE POSSESSION**

 {¶ 30} In acquiring title to real property by adverse possession, a person must establish, by clear and convincing evidence, that the person has possessed the land in an open, notorious, exclusive, adverse, and continuous manner for at least 21 years. *Evanich v. Bridge*, 119 Ohio St.3d 260, 2008-Ohio-3820, 893 N.E.2d 481, ¶ 7, citing *Grace v. Koch* (1998), 81 Ohio St.3d 577, 579–581, 692 N.E.2d 1009. See also *Vaughn v. Johnston*, Brown App. No. CA2004–06–009, 2005-Ohio-942, 2005 WL 516527, ¶ 9; *Bonham v. Hamilton*, Butler App. No. CA2006–02–030, 2007-Ohio-349, 2007 WL 210587, ¶ 11; *Bravard v. Curran*, 155 Ohio App.3d 713, 2004-Ohio-181, 803 N.E.2d 846, ¶ 11. The person holding legal title to the property is entitled to a strong presumption that he or she is legally the owner of the property. *Vaughn* at ¶ 9, citing *Judd v. Jackson*, Butler App. No. CA2002–11–291, 2003-Ohio-6383, 2003 WL 22830662; *Bravard* at ¶ 11. "Therefore, the burden of establishing the elements necessary to acquire title by adverse possession rests heavily upon the person claiming such ownership." *Vaughn* at ¶ 9; *Bonham* at ¶ 11. Ownership by adverse possession must be proved and cannot be presumed. *Bravard* at ¶ 11.

 {¶ 31} "Clear and convincing evidence is that proof which establishes in the minds of the trier of fact a firm conviction as to the allegations sought to be proved." *Welch v. Marlow*, Morgan App. No. 08 CA 8, 2009-Ohio-6145, 2009 WL 4021150, ¶ 30. A failure to prove any of the elements of adverse possession results in a failure to acquire title by adverse possession. Id. at ¶ 31. The doctrine of adverse possession is disfavored in law because it forces the legal title holder to forfeit ownership without compensation. It is for this reason that the elements of the doctrine are so stringent. Id.

 {¶ 32} "Adverse possession may be established by using the land in any way that the owner would normally use it." *Vaughn* at ¶ 13, citing *Thompson v. Hayslip* (1991), 74 Ohio App.3d 829, 833, 600 N.E.2d 756, and *Vanasdal v. Brinker* (1985), 27 Ohio App.3d 298, 299, 27 OBR 343, 500 N.E.2d 876. "If the owner of real property would use a portion of it for ingress and egress, and would maintain it by replenishing and grading the gravel and mowing the grass, an individual could obtain title to that property by adverse possession provided she uses the property in the same manner and satisfied the elements of adverse possession." Id., citing *Vanasdal* at 299, 27 OBR 343, 500 N.E.2d 876

---

defendants' property, the defendants were on notice that they were purchasing the right to use a right of way rather than a fee simple interest in the property.

and *Beener v. Spahr* (Dec. 15, 2000), Clark App. No. 2000–CA–40, 2000 WL 1840066.

 {¶ 33} Possession is open if the use of the disputed property is without concealment. *Franklin v. Massillon Homes II, L.L.C.*, Stark App. No. 08–CA–288, 2009-Ohio-5487, 2009 WL 3321007, ¶ 25; *Welch*, 2009-Ohio-6145, 2009 WL 4021150, at ¶ 26. The uncontroverted evidence by the defendant Skip Bacon is that in addition to using the drive for ingress and egress, he maintained the right of way himself by filling potholes, trimming bushes, and placing gravel on the roadway. The plaintiffs' witness, James Goble, testified that while he had not seen the defendant remove snow from the drive, he had seen him use a tractor to fill potholes and spread gravel to fill sinkholes. Therefore, based upon this testimony, the court finds that the defendants have satisfied the first element of adverse possession, because no attempt was made to conceal the fact that they were actively maintaining at least a portion of the roadway.

 {¶ 34} In order for possession to be considered notorious, the "use must be known to some who might reasonably be expected to communicate [his] knowledge to the owner * * * [or] so patent that the true owner of the property could not be deceived as to the property's use." *Franklin*, 184 Ohio App.3d 455, 2009-Ohio-5487, 921 N.E.2d 314, at ¶ 25; *Welch*, 2009-Ohio-6145, 2009 WL 4021150, at ¶ 26. The evidence indicates that the plaintiffs were aware of the defendants' use of the property for ingress and egress; however, there was no testimony by either of the plaintiffs about the defendants' maintenance of the right of way. That being said, the testimony of James Goble, the plaintiffs' neighbor, shows that he was aware of the defendant's maintenance of the right of way. Further, the type of maintenance performed by the defendant, at least through the placing of gravel along the drive and the filling of the potholes, was such that the true owner could not be deceived as to its existence. Additionally, the defendants have installed a water line through the right of way, thus causing significant damage to the roadway so that it was, at least at one point, impassible for some time. This is something that the true owner could not have ignored. Therefore, the court finds that the defendants have satisfied the second element of their adverse-possession defense.

 {¶ 35} For use of the property to be considered continuous and exclusive, "[u]se of the property does not have to be exclusive of all individuals. Rather, it must be exclusive of the true owner entering onto the land and asserting his right to possession. It must also be exclusive of third persons entering the land under their own claim of title, or claiming to have permission to be on the premises from the true title holder. If the title holder enters onto the land without asserting, by word or act, any right of ownership or possession, his

presence on the land does not amount to an actual possession, and the possession may properly be attributed to the party who is on the land exercising or claiming exclusive control thereof. It is not necessary that all persons be excluded from entering upon and using the premises." *Franklin,* 184 Ohio App.3d 455, 2009-Ohio-5487, 921 N.E.2d 314 at ¶ 27; *Welch,* 2009-Ohio-6145, 2009 WL 4021150 at ¶ 28. The evidence shows that all of the surrounding neighbors used the right of way in question. Further, the testimony of both James Goble and Jeffrey Roll indicated that the plaintiff as well as the defendant maintained the roadway. The testimony of James Goble was that the plaintiff had cleared snow several times and that there had never been a discussion between the neighbors of common maintenance of the roadway. Jeffrey Roll indicated in his testimony that in addition to snow removal, he trimmed the trees and cut the grass along the right of way. He, too, indicated that there was no maintenance agreement. Therefore, based upon this testimony, the court finds that, assuming the acts of the parties could constitute a use of property appropriate in an adverse-possession action, both parties acted in a manner consistent with ownership of the property. Thus, the court finds that the defendants have not shown that their use of the right of way for ingress and egress, as well as their maintenance of the right of way, was exclusive to them. Instead, multiple people used the right of way for ingress and egress, and both the plaintiff and the defendant took action to maintain the roadway without any type of maintenance agreement. The lack of a maintenance agreement is consistent with both parties' acting in a manner consistent with ownership.

{¶ 36} Based upon this analysis, the court finds that the defendants have failed to show by clear and convincing evidence exclusive use of the right of way and have thus failed to satisfy the third element of a claim of adverse possession. Since the failure to prove any element of adverse possession is fatal to the defendants' defense, the court finds that it may end its analysis here. However, since the court has analyzed the first three elements, it will proceed to analyze the remaining two so that there is no question as to which elements the court finds are unsupported by the evidence.

{¶ 37} To establish the adverseness element of a claim of adverse possession, " 'the tenant must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest.' " *Bravard,* 155 Ohio App.3d 713, 2004-Ohio-181, 803 N.E.2d 846, at ¶ 11, quoting *Grace v. Koch* (1998), 81 Ohio St.3d 577, 581, 692 N.E.2d 1009. When determining the adverseness element, the court must not require the claimant to establish subjective intent to acquire title by adverse possession. *Evanich,* 119 Ohio St.3d 260, 2008-Ohio-3820, 893 N.E.2d 481, at ¶ 8. It is the intent to possess that constitutes the adverseness element and not the

actual motive or purpose of the occupant. Id., citing *Humphries v. Huffman* (1878), 33 Ohio St. 395, 402; *Franklin,* 184 Ohio App.3d 455, 2009-Ohio-5487, 921 N.E.2d 314, at ¶ 4. Further, "[t]his 'occupancy must be such as to give notice to the real owner of the extent of the adverse claim.'" *Evanich* at ¶ 8, quoting *Humphries* at 404; *Franklin* at ¶ 24. Any use of the property that is inconsistent with the rights of the titleholder is considered to be adverse or hostile. *Franklin* at ¶ 26; *Welch,* 2009-Ohio-6145, 2009 WL 4021150, at ¶ 27. The evidence before the court proves that the defendants have, at least on one occasion, made the right of way impassible through the installation of a water line. The use of the property for this purpose is inconsistent with the rights of the plaintiffs and is consistent with the defendants' assertion that they own the property in question. Therefore, the court finds that the defendants have proven the fourth element of an adverse-possession defense.

{¶ 38} Finally, to establish the required 21–year period, persons asserting a claim of adverse possession "may add to their own term of adverse use any period of adverse use by prior succeeding owners in privity with one another." Id. at ¶ 29. See also *Jacks v. Brewington,* 177 Ohio App.3d 844, 2008-Ohio-4393, 896 N.E.2d 226, ¶ 32. The testimony and evidence before the court proves that the defendants have been using the roadway since November 23, 1999, when they purchased their property. It is unclear from the evidence how long the defendants have been taking action to maintain the roadway. Even assuming that their use was open, notorious, exclusive, adverse, and continuous throughout their ownership of parcel number 32–30–18A–005, their use has not continued for a period of 21 years. While the court is cognizant of the fact that it may tack on prior use by the defendants' predecessors in interest, there has been no evidence of any action by those predecessors that could satisfy the elements of adverse possession. Specifically, there has been no evidence to indicate that the defendants' predecessors in interest used the property in a manner that was open, notorious, exclusive, continuous, and adverse as to the plaintiffs. The only evidence before the court shows that those predecessors did use the right of way for ingress and egress, but that is not inconsistent with the plaintiffs' ownership of the land. Therefore, the court finds that, assuming the defendants began acting adversely to the ownership rights of the plaintiffs on day one of their purchase, the defendants have owned the property for only a little over ten years; thus, a claim of adverse possession is not ripe for another 11 years. Based upon this analysis, the court finds that the defendants have failed to prove by clear and convincing evidence the fifth and final element of a claim of adverse possession.

{¶ 39} The defendants argue that they have paid the taxes on the property subject to the right of way in the past. In order to prove this, the defendants point to the tax maps from 1944 to the present, in which many of the

maps show that the defendants own a peninsula-type property, which would include the right of way. Some of the other maps show that the right of way is contained within the plaintiffs' property. However, in Ohio, the payment of taxes alone is insufficient to prove title by adverse possession. *Moore v. Smith,* Washington App. No. 07CA61, 2008-Ohio-7004, 2008 WL 5451340, fn. 2.

{¶ 40} Based upon the foregoing, the court hereby finds that the defendants have failed to prove by clear and convincing evidence that their use of the right of way was exclusive and that their adverse possession continued for a period of 21 years. Therefore, since the failure to prove any one element is fatal to the defendants' defense, the court finds that the defendants have not proven ownership by adverse possession.

SECOND AFFIRMATIVE DEFENSE:

PRESCRIPTIVE EASEMENT

{¶ 41} "An 'easement' is a property interest in the land of another that allows the owner of the easement a limited use of the land in which the easement exists." *McCumbers v. Puckett,* Fayette App. No. CA2008–11–038, 2009-Ohio-4465, 2009 WL 2751452, ¶ 14, citing *Colburn v. Maynard* (1996), 111 Ohio App.3d 246, 253, 675 N.E.2d 1333. Another definition of an easement is "a right that the owner of one estate, referred to as the 'dominant estate,' may exercise for his benefit in or over another's estate, referred to as the 'servient estate.' " Id., citing *First Natl. Bank v. Mountain Agency, L.L.C.,* Clermont App. No. CA2008–05–056, 2009-Ohio-2202, 2009 WL 1278429, ¶ 14. See also *Cadwallader v. Scovanner,* 178 Ohio App.3d 26, 2008-Ohio-4166, 896 N.E.2d 748, ¶ 10. Easements may be created by (1) express grant, (2) implied grant, (3) prescription, or (4) estoppel. *McCumbers* at ¶ 14.

{¶ 42} The defendants in this case argue that they have acquired a prescriptive easement over the property of the plaintiffs. "To establish the right to a prescriptive easement, the moving party must demonstrate that she has used the property openly, notoriously, and adversely to the servient property owner's rights for a continuous period of 21 years." *Vaughn,* 2005-Ohio-942, 2005 WL 516527, at ¶ 11, citing *Pence v. Darst* (1989), 62 Ohio App.3d 32, 37, 574 N.E.2d 548. Thus, to prove that one is entitled to a prescriptive easement, one must prove that the use was (1) open, (2) notorious, (3) adverse to the property rights of the servient estate's owner, (4) continuous, and (5) for a period of at least 21 years. *McCumbers,* 183 Ohio App.3d 762, 2009-Ohio-4465, 918 N.E.2d 1046, at ¶ 15, citing *Cadwallader v. Scovanner,* 178 Ohio App.3d 26, 2008-Ohio-4166, 896 N.E.2d 748, ¶ 55. Each of these elements must be proved by clear and convincing evidence. Id. at ¶ 55, citing *125 Properties v. Regency Ctrs., L.P.,* Clermont App. No. CA2005–08–076, 2006-Ohio-1438, 2006 WL 763135. Once the

claimant makes a prima facie case, the burden shifts to the landowner to prove that the use was permissive. *EAC Properties v. Hall,* Franklin App. No. 08AP–251, 2008-Ohio-6224, 2008 WL 5064949, ¶ 7, citing *Goldberger v. Bexley Properties* (1983), 5 Ohio St.3d 82, 84, 448 N.E.2d 1380, and *Pavey v. Vance* (1897), 56 Ohio St. 162, 46 N.E. 898.

{¶ 43} The elements for a prescriptive easement differ from those required for adverse possession only in that a prescriptive easement does not require "exclusive" use. *Vaughn* at ¶ 11. Further, like the doctrine of adverse possession, " '[p]rescriptive easements are not favored in law, because the legal titleholder forfeits rights to another without compensation.' " *McCumbers* at ¶ 15, quoting *Cadwallader* at ¶ 55.

{¶ 44} " 'Adverse use' can be shown only when a party uses the land 'without permission and inconsistent with the rights of the property owner.' " *McCumbers,* 183 Ohio App.3d 762, 2009-Ohio-4465, 918 N.E.2d 1046, at ¶ 15, quoting *Cadwallader,* 178 Ohio App.3d 26, 2008-Ohio-4166, 896 N.E.2d 748, at ¶ 57. Permissive use does not ripen into an easement by prescription, no matter how long the use of the property exists. Id., citing *Pennsylvania R. Co. v. Donovan* (1924), 111 Ohio St. 341, 350, 145 N.E. 479, and *Monroe Bowling Lanes v. Woodsfield Livestock Sales* (1969), 17 Ohio App.2d 146, 152, 46 O.O.2d 208, 244 N.E.2d 762. Thus, "[a]dverseness can be shown only when a party uses the land without the permission of the owner." *Cadwallader* at ¶ 60.

{¶ 45} Though separate, the two elements of openness and notoriousness are related and are generally read together. *Cadwallader* at ¶ 56, citing *Sepela v. MBL Partners, Ltd.* (Dec. 26, 2000), Clermont App. No. CA2000–06–038, 2000 WL 1875812. Use is open if the party does not attempt to conceal the use of the property. Id., citing *Katz v. Metro. Sewer Dist.* (1997), 117 Ohio App.3d 584, 690 N.E.2d 1357. The use is notorious if it is so patent that the legal titleholder could not be deceived as to the property's use. Id. These two elements are the same as those for adverse possession; therefore, the court finds that the same analysis applies. For that reason, the court will refer to its prior analysis and find that the defendants have satisfied these elements of their affirmative defense of prescriptive easement.

{¶ 46} The use of the property is considered to be adverse if it is without permission and inconsistent with the rights of the legal titleholder. *Cadwallader* at ¶ 57, citing *Kimball v. Anderson* (1932), 125 Ohio St. 241, 181 N.E. 17. It must be in conflict with the apparent use of the true owner or be of a nature that will signal the owner that someone is claiming a right over his or her property. Id., citing *125 Properties.* If there is an express or implied recognition that a landowner can put an end to the use of the property by the person

claiming a prescriptive easement, then the use is not considered to be adverse. Id., quoting *Manos v. Day Cleaners & Dyers, Inc.* (1952), 91 Ohio App. 361, 363, 48 O.O. 455, 108 N.E.2d 347. Again, the court will refer to its prior analysis and find that the defendants have made some use of the property that is without permission and inconsistent with the rights of the legal titleholders.

{¶ 47} " 'Use is "continuous" if it is neither interrupted by acts of the owner, nor abandoned by the adverse user.' " *Cadwallader*, 178 Ohio App.3d 26, 2008-Ohio-4166, 896 N.E.2d 748, at ¶ 58, quoting *Sepela*, 2000 WL 1875812, at *3. The evidence proves that the adverse user, the defendants, have not abandoned their use of the property. Further, there is no evidence to indicate that the plaintiffs have done anything to interrupt the defendants' use of the right of way. Therefore, the court finds that the defendants' use of the right of way has been continuous and that this element has been satisfied.

{¶ 48} Finally, the adverse use must continue for a period of 21 years. However, the court finds that the adverse use has not continued for a period of 21 years. As in its analysis for adverse possession, the court finds that the defendants have been using the roadway since November 23, 1999, when they purchased their property. However, it is unclear from the evidence how long the defendants have been actively maintaining the roadway. While the court is cognizant of the fact that it may tack on prior use by the defendants' predecessors in interest, there has been no evidence of any use by those predecessors that could satisfy the elements of a prescriptive easement. Specifically, there has been no evidence to indicate that the defendants' predecessors in interest used the property in a manner that was open, notorious, adverse, and continuous as to the plaintiffs. The only evidence before the court proves that those persons did use the right of way for ingress and egress, but that is not inconsistent with plaintiffs' ownership of the land. Therefore, the court finds that, assuming the defendants began acting contrary to the ownership rights of the plaintiffs on day one of their purchase, the defendants have owned the property for only a little over ten years; thus, a claim for a prescriptive easement is not ripe for another 11 years. Based upon this analysis, the court finds that the defendants have failed to prove by clear and convincing evidence the final element of their affirmative defense of a prescriptive easement.

{¶ 49} Based upon the foregoing, the court hereby finds that the defendants have failed to prove by clear and convincing evidence that their use of the right of way was for a period of 21 years. Therefore, since the failure to prove any one element is fatal to the defendants' defense, the court finds that the defendants have not proven that they have acquired a prescriptive easement in this case.

THIRD AFFIRMATIVE DEFENSE:

LACHES

{¶ 50} Laches is defined as " ' "an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." ' " *Hayman v. Hayman,* 184 Ohio App.3d 97, 2009-Ohio-4855, 919 N.E.2d 797, ¶ 47, quoting *Smith v. Smith* (1957), 107 Ohio App. 440, 443–444, 8 O.O.2d 424, 146 N.E.2d 454. " 'Delay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim.' " *Wolf v. Wolf,* Preble App. No. CA2009–01–001, 2009-Ohio-3687, 2009 WL 2231779, ¶ 31, quoting *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113, paragraph three of the syllabus. See also *Hayman* at ¶ 47.

{¶ 51} "The doctrine of laches bars a judgment if there was (1) an unreasonable delay or lapse of time in asserting a right, (2) an absence of excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the defendant." *Bernhard v. Perrysburg Twp.,* 185 Ohio App.3d 470, 2009-Ohio-6345, 924 N.E.2d 856, ¶ 31, citing *Mason City School Dist. v. Warren Cty. Bd. of Elections,* 107 Ohio St.3d 373, 2005-Ohio-5363, 840 N.E.2d 147, ¶ 12. If a defendant can successfully demonstrate the elements of a laches defense, the burden then shifts to the plaintiff to explain the delay. Id. at ¶ 34, citing *Stevens v. Natl. City Bank* (1989), 45 Ohio St.3d 276, 285, 544 N.E.2d 612. "[A] delay in asserting a claim, in and of itself, is insufficient to establish a material prejudice." *Whitestone Co. v. Stittsworth,* Franklin App. No. 06AP–371, 2007-Ohio-233, 2007 WL 155299, ¶ 43.

{¶ 52} The first element of a claim of laches is an unreasonable delay or lapse of time in asserting a right. The court finds that the evidence clearly shows that the plaintiffs contacted attorney Paul Yelton once they discovered that the defendants had installed a sewer line across their property and had begun construction of a water line. Yelton then performed his marketable-title exam and notified the plaintiffs in July 2008 that they were, in fact, the owners of the property in dispute. The plaintiffs then filed their complaint in this case in September 2008. The court finds that the delay from July 2008, when the plaintiffs discovered from Yelton that they were the owners of the property, to the filing of the action in September 2008 was not unreasonable, given that they had to contact an attorney and have Olberding survey the property. The resulting prejudice to the defendants is the defendants' own fault, as they continued to construct the water line even after they were notified that a lawsuit was pending. Therefore, since all four elements must be satisfied, and based

upon the court's finding that the defendants have failed to prove an unreasonable delay or lapse of time in the plaintiffs' assertion of a right to the property, the court finds that the defendants have not proven their third affirmative defense of laches.

### FOURTH AFFIRMATIVE DEFENSE:

### WAIVER

{¶ 53} " ' "Waiver" is defined as a voluntary relinquishment of a known right.' " *Williamson v. Walles*, Lucas App. No. L–08–1010, 2009-Ohio-1117, 2009 WL 641338, ¶ 21, quoting *State ex rel. Wallace v. State Med. Bd. of Ohio* (2000), 89 Ohio St.3d 431, 435, 732 N.E.2d 960. "Waiver assumes one has an opportunity to choose between relinquishing or enforcing a right." Id., citing *Chubb v. Ohio Bur. of Workers' Comp.* (1998), 81 Ohio St.3d 275, 279, 690 N.E.2d 1267. "A person may waive rights and privileges secured by contract, conferred by statute, or guaranteed by the Constitution, provided the waiver does not violate public policy." *Soc. Natl. Bank v. Sec. Fed. S. & L.* (1994), 71 Ohio St.3d 321, 329, 643 N.E.2d 1090 (Jones, J., dissenting), citing *State ex rel. Hess v. Akron* (1937), 132 Ohio St. 305, 307, 8 O.O. 76, 7 N.E.2d 411.

{¶ 54} The party attempting to assert waiver " 'must prove a clear, unequivocal, decisive act of the party against whom the waiver is alleged, showing such a purpose or acts amounting to an estoppel on his part.' " *Williamson*, 2009-Ohio-1117, 2009 WL 641338, at ¶ 21, quoting *White Co. v. Canton Transp. Co.* (1936), 131 Ohio St. 190, 5 O.O. 548, 2 N.E.2d 501, paragraph four of the syllabus. To constitute a waiver, there must be (1) an existing right, benefit, or advantage, (2) knowledge of the existence thereof, and (3) an intention to relinquish the right, benefit, or advantage. *Corbett v. Corbett* (Oct. 10, 1989), Clermont App. No. CA89–04–017, 1989 WL 119406, at *2, citing *Parente v. Day* (1968), 16 Ohio App.2d 35, 38, 45 O.O.2d 104, 241 N.E.2d 280.

{¶ 55} In this case, the defendants have failed to prove that the plaintiffs clearly, unequivocally, decisively, and voluntarily relinquished a known right. In order to prove waiver, the defendants would have to have proven that there was an existing right, knowledge on the part of the plaintiffs of its existence, and an intention by the plaintiffs to relinquish the right. The court finds, and has previously determined, that the plaintiffs are clearly the owners of the property in question; thus, the plaintiffs clearly have an existing right to the property. Further, the evidence proves that the plaintiffs knew that the right existed through the letters of attorney Paul Yelton and the survey performed by Jay Olberding. The court finds, however, that the defendants have failed to prove the third element of waiver, i.e., intent by the plaintiffs to voluntarily relinquish their right to the property. Instead of voluntarily relinquishing their right to the

property, the plaintiffs contacted an attorney to determine exactly what those rights were and then filed a lawsuit in an attempt to enforce their rights. Therefore, given that there is no evidence to prove that the plaintiffs took any action indicating an intent to voluntary relinquish their right to the property, the court finds that the defendants have failed to prove their fourth affirmative defense of waiver.

## CONCLUSION

{¶ 56} Based upon the foregoing, and the competent, credible evidence before the court, the court hereby finds that the plaintiffs are the owners of the property containing a 14–foot right of way to be used for ingress and egress by the adjoining properties.

{¶ 57} The court further finds that the defendants have failed to prove the affirmative defenses of adverse possession, prescriptive easement, laches, and waiver. Therefore, the court hereby declares that the plaintiffs are the owners of the property in question.

{¶ 58} The court is cognizant of the fact that there are eight remaining claims in the complaint and that the issue of damages is outstanding; however, given that these remaining issues are dependent upon the issue of ownership, the court finds, pursuant to Civ.R. 54(B), that there is no just reason for delay.

{¶ 59} This case is hereby set for scheduling conference on September 16, 2010, at 9:00 a.m. to determine whether a trial is necessary on the remaining eight claims in the complaint.

{¶ 60} It is ordered that this decision shall serve as the judgment entry in this matter.

{¶ 61} It is further ordered that there is no just cause for delay.

Judgment accordingly.