HAYMAN, Appellee,

v.

HAYMAN, Appellant.

[Cite as *Hayman v. Hayman*, 184 Ohio App.3d 97, 2009-Ohio-4855.]

Court of Appeals of Ohio,
Fifth District, Fairfield County.

No. 2008 CA 0071.

Decided Sept. 10, 2009.

James M. Linehan, for appellee.

R.C. Stoughton Sr., for appellant.

EDWARDS, Judge.

{¶ 1} Defendant-appellant, Harry Hayman, appeals from the September 24, 2008 decision of the Fairfield County Court of Common Pleas, Domestic Relations Division.

STATEMENT OF THE FACTS AND CASE

{¶ 2} Appellant, Harry Hayman, and appellee, Pamela Hayman, were married on February 19, 1953. Six children were born of the marriage, namely: John H., Melanie, Della, Frederick, Lisa, and Edward.

{¶ 3} A decree of divorce was filed on October 10, 1968. Pursuant to the terms of the decree, appellant was ordered to pay $80 a week plus poundage as child support. Appellant was ordered to pay this amount to the clerk of court as trustee for appellee. At the time, all the children were minors and resided with appellee.

{¶ 4} As memorialized in an entry filed on June 26, 1971, the trial court found that John, the oldest child, was emancipated. Appellant's child-support order, upon agreement of the parties, was reduced to $68 a week plus poundage. Appellant was ordered to pay that amount to the clerk of court as trustee for appellee. After Melanie moved in with him, appellant, on October 18, 1971, filed a motion requesting that his child-support obligation be reduced by $8 per week. The trial court, pursuant to a judgment entry filed on December 2, 1997, overruled that request.

{¶ 5} Subsequently, on September 30, 2004, the Fairfield County Child Support Enforcement Agency ("CSEA") filed a motion asking the trial court to determine what arrearage amount was owed by appellant and to order appellant to make payments on the amount. At the time, all of the children were emancipated. In response, appellant, on August 16, 2005, filed a motion asking that the motion be dismissed based on the doctrine of laches. Appellant argued that a 28–year delay by appellee in seeking child-support arrearages materially prejudiced him.

{¶ 6} A hearing before a magistrate was held on June 1, 2006. Prior to any testimony, the parties stipulated to CSEA Exhibit 1, which was a calculation of the arrearages owed by appellant. The records showed that appellant paid $4,159.41 in child support in 1969, $4,240 in child support in 1970, $3,688 in child support in 1971, $3,604 in child support in 1972, $3,536 in child support in 1973, $3,128 in child support in 1974, $408 in child support in 1975, and $1,020 in child support in 1976. Appellant did not make any payments after 1976. The records showed that appellant owed arrearages of $19,229.03.

{¶ 7} At the hearing, appellee testified that Melanie left appellee's home and went to live with appellant in 1972, but that Melanie stayed with appellant for only three months before returning to appellee's home. Melanie got married shortly after moving back in with appellee. Appellee further testified that Edward, the parties' youngest child, dropped out of high school in 1980 and got married. According to appellee, Della graduated from high school in 1975, and

Lisa got married in 1977. Frederick graduated from high school in 1977, when he was 17 years old, and joined the military.

{¶ 8} Appellee testified that although she was not getting child support, she never filed a motion requesting it because she did not know where appellant lived because he moved often. Although she thought that a couple of her children might have had contact with appellant from 1971 on, appellee never asked them if they knew where appellant was. At the hearing, appellee testified that Edward went to work at the same place as appellant in 1982, but that she never attempted to call information and ask for appellant's phone number. She also admitted that she never tried to ascertain appellant's address through the Bureau of Motor Vehicles.

{¶ 9} The following testimony was adduced when appellee was asked why, in 2004, she filed a request for past-due child support:

{¶ 10} "A. Because I—at the time I was having financial problems, medical problems, and he was able—he seemed to have really prospered by marry—getting married to his present wife, and so I just decided to go back and see if I could file for child support that he owed me.

{¶ 11} "Q. Well, here's—here's what I find interesting, Pamela. How did you know he was married if you didn't know where he lived?

{¶ 12} "A. One—one of the children told me he got married. My daughter Melanie.

{¶ 13} "Q. All right. And how did you know that he was prosperous as a result of getting married?

{¶ 14} "A. She told me."

{¶ 15} Appellee, when questioned, testified that she knew that she had a duty to notify the court when her children became emancipated.

{¶ 16} When questioned later about why she did not pursue child support earlier, appellee testified that sometime before 1980, appellant came into where she was working and asked to borrow $250 from appellee and her then husband. She testified that appellant never repaid the money and that she did not see the point in trying to get child support from him. She further testified that she learned three or four years before the hearing that appellant had assets. Appellee also testified that she incurred hardships in coming to court and never had a driver's license.

{¶ 17} At the hearing, appellant testified that once his children became adults, he loaned them money and co-signed car loans for them. He further testified that he was never notified between 1971 and 2004 that he owed back child support. Appellant testified that he and appellee agreed to a reduction in child

support after their oldest child left home. The following testimony was adduced when he was asked if he and appellee agreed to reduce support after that at any point in time:

{¶ 18} "A. We mutually agreed that we would reduce it by the amount that the Court had on the original child. We discussed that. That's why this was such an alarm to me.

{¶ 19} "Q. Okay.

{¶ 20} "A. We had—and it was just a—it was accepted. It was accepted on my part, certainly, that you would automatically reduce it on the amount that was reduced from the first one until it was—that was my understanding.

{¶ 21} "Q. Okay. So you—you thought that you had an agreement to reduce support by $12 per child as they reached maturity?

{¶ 22} "A. Yes. I thought that's—but I think we continued to pay, even above that, because I felt that we could go to court at any time and have that addressed again."

{¶ 23} Appellant testified that although he reduced his support payment by $12 a week as each child left home, appellee never objected.

{¶ 24} Appellant also testified that if he had known between 1980 and 2004 of the allegations that he owed child-support arrearages, the money that he made available to his children through loans or financial or estate planning would have been different. He also testified that from 1971 through 2004, his phone number was always listed in the telephone book and that his children knew where he was living and working for the majority of that time. Appellant testified that he helped his daughter Lisa with tuition after her husband died and also paid her property taxes one year. The following is an excerpt from appellant's testimony:

{¶ 25} "A. From—any money that she would get from me would come from what I've set aside for the children. I have enough to live on. And that's the plan that I had set up, was trying to eliminate the—the court system, the probate system, so that each of the children, with the exception of Della, would benefit from my death.

{¶ 26} "Q. All right. So the resources you have available to you essentially are your current Social Security, which is $900—some a month?

{¶ 27} "A. That's correct.

{¶ 28} "Q. And the ability to satisfy this claimed arrearage in support would essentially be taken from the allocation of money to five of your children and given to Pamela?

{¶ 29} "A. That's correct."

{¶ 30} At the hearing, appellant testified that he had substantial assets, real estate, and other investments, including CDs. He estimated that he owned approximately $200,000 of gold and silver.

{¶ 31} Appellant testified that he did not make any child-support payments directly to appellee but that he made all of his payments through the clerk of court's office.

{¶ 32} The magistrate, in a decision filed on April 24, 2007, concluded that appellee's claim was not barred by the doctrine of laches. While the magistrate found that appellee had failed to assert her claim for child support for an unreasonable length of time, she found that appellant "has not established that he was materially prejudiced by [appellee's] delay in bringing this action." The magistrate recommended that appellant be ordered to pay $530 a month in child support for a period of 36 months. Appellant then filed objections to the magistrate's decision.

{¶ 33} The trial court, pursuant to a decision filed on September 24, 2008, approved and adopted the magistrate's decision with the exception that the trial court found appellant's objection to the monthly amount ordered to be paid well taken. The trial court, in its decision, stated: "The court finds the appropriate amount is $353.60 per month plus processing charge. This is the amount of [appellant's] monthly child support obligation when the order terminated plus 20% that [the] statute directs to be added to collect arrears."

{¶ 34} Appellant now raises the following assignments of error on appeal:

## First Assignment of Error

{¶ 35} "The trial court abused its discretion and erred as a matter of law in ruling that defendant-appellant should pay child support of $530.00 a month, subsequently reduced to $353.60 per month plus 20% to collect arrears."

## Second Assignment of Error

{¶ 36} "The trial court abused its discretion and erred as a matter of law and made a decision against the manifest weight of the evidence in ruling that defendant-appellant should not be granted affirmative relief from his obligation to pay the child support arrearage based on the doctrine of laches."

## I

{¶ 37} Appellant, in his first assignment of error, argues that the trial court applied an incorrect legal standard in determining the monthly child-support arrearage to be paid by appellant based on the requirements of R.C. 3123.21.

{¶ 38} Appellant specifically argues that while it appears that the trial court intended to reduce the child support to an amount equal to the obligation in effect at the termination of child support, the amount ordered was not equal to the current order that was in effect when child support terminated. Appellant notes that "[t]he last child support order was for payment of an 'in gross' amount of $68.00 per week * * * This amounts to $294.67 per month. The Judge ordered payment of $353.60 per month plus payment of 20% of that amount to pay towards arrearages."

{¶ 39} In *Booth v. Booth* (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028, the Ohio Supreme Court determined that an abuse-of-discretion standard is the appropriate standard of review in matters concerning child support. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 40} R.C. 3123.21 states: "(A) A withholding or deduction notice described in section 3121.03 of the Revised Code or an order to collect current support due under a support order and any arrearage owed by the obligor under a support order pertaining to the same child or spouse shall be rebuttably presumed to provide that the arrearage amount collected with each payment of current support equal at least twenty per cent of the current support payment."

{¶ 41} In deviating from "the twenty percent presumption," a trial court "may consider evidence of household expenditures, income variables, extraordinary health care issues, and other reasons for a deviation from the twenty percent presumption." R.C. 3123.21(B).

{¶ 42} There is thus a rebuttable presumption of a minimum monthly payment of 20 percent of the current support payment to address an arrearage, *Lyons v. Bachelder* (Sept. 8, 2005), Morrow App. No. 2004–CA–0018, 2005 WL 2266672, ¶ 34, with the opportunity to deviate upward or downward from the 20 percent presumption.

{¶ 43} In the case sub judice, the current support order was $68 a week or $294.67 a month. Twenty percent of that amount is $58.93. The two figures added together equal $353.60, which is the amount that the trial court ordered appellant to pay. Contrary to appellant's argument, the trial court did not order him to pay $353.60 plus 20 percent. While appellant argues that there was no evidence of appellant's living expenses and that, therefore, the decision as to how much he should pay monthly toward arrearages is arbitrary, we note that appellant testified that he had enough money to live on and that he had substantial assets. Moreover, the trial court found, based on appellant's testimony, that appellant would pay arrearages money out of the money that he had

already saved for his children. Based on the foregoing, we cannot say that the trial court abused its discretion in ordering appellant to pay $353.60 per month plus processing charge.

{¶ 44} Appellant's first assignment of error is therefore overruled.

## II

{¶ 45} Appellant, in his second assignment of error, argues that the trial court erred in failing to apply the doctrine of laches to relieve him from his obligation to pay child support arrearages. We disagree.

{¶ 46} The decision of a trial court concerning the application of the doctrine of laches will not be reversed on appeal in the absence of an abuse of discretion. *Payne v. Cartee* (1996), 111 Ohio App.3d 580, 590, 676 N.E.2d 946. An abuse of discretion is more than just an error in judgment but rather implies that the court's attitude is unreasonable, arbitrary, or unconscionable. See *Blakemore*, 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 47} Laches is an equitable doctrine. It has been defined by the Ohio Supreme Court as " 'an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party.' " *Connin v. Bailey* (1984), 15 Ohio St.3d 34, 35, 15 OBR 134, 472 N.E.2d 328, quoting *Smith v. Smith* (1957), 107 Ohio App. 440, 443–444, 8 O.O.2d 424, 146 N.E.2d 454. Delay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting the claim. *Connin*, 15 Ohio St.3d at 35–36, 15 OBR 134, 472 N.E.2d 328. See also *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113, paragraph three of the syllabus.

{¶ 48} We find that the trial court did not abuse its discretion in finding that appellant was not materially prejudiced by the 28–year delay between the time when appellee received her last child-support payment in 1976 until appellee filed her motion in 2004. Appellant contends that he was materially prejudiced because he has financially assisted all of his children over the last 28 years and has provided for them in his estate planning and that if the arrearage issue had been raised earlier, the money that he has already given to his children or has set aside for his children would have been applied to the arrearage instead.

{¶ 49} However, at the hearing, appellant testified that any money that appellee would get from him would come from the money that he had set aside for the children. He further testified that he had enough to live on and that he

had substantial assets. Thus, as noted by the magistrate, appellant did not allege that his standard of living or ability to provide for himself would be affected.

{¶ 50} Appellant also contends that he was materially prejudiced because he no longer has his bank records to check against CSEA's records. At the hearing, appellant did not allege that he made any child-support payments directly to appellee. All payments made by appellant should, therefore, appear on CSEA's records. Thus, as noted by the trial court, the fact that appellant could not obtain his banking records did not prejudice him. We further note that appellant's counsel stipulated that the CSEA records were "as accurate as can be after 36 years."

{¶ 51} In short, we find that the trial court's decision was not arbitrary, unconscionable, or unreasonable because appellant failed to show that he was materially prejudiced by appellee's delay.[1]

{¶ 52} Appellant's second assignment of error is, therefore, overruled.

{¶ 53} Accordingly, the judgment of the Fairfield County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

HOFFMAN, P.J., and WISE, J., concur.

---

1. While appellant, in his brief, contends that the magistrate's conclusions that appellee acted unreasonably and that appellant was not materially prejudiced by the unreasonable delay are in conflict, we disagree.