[Cite as *Watch Tower Bible & Tract Soc. of Pennsylvania v. Fifth Third Bank*, 2011-Ohio-5180.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96403**

# WATCH TOWER BIBLE & TRACT SOCIETY OF PENNSYLVANIA

PLAINTIFF-APPELLANT

vs.

# FIFTH THIRD BANK

DEFENDANT-APPELLEE

**JUDGMENT:**
**REVERSED AND REMANDED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-676742

**BEFORE:** Jones, J., Kilbane, A.J., and Keough, J.

**RELEASED AND JOURNALIZED:** October 6, 2011

**ATTORNEYS FOR APPELLANT**

Jacqueline Kim Roberts
Jennifer L. Speck
J.K. Roberts Law Group, Ltd.
17601 West 130th Street
Suite 4B
North Royalton, Ohio 44133


**ATTORNEYS FOR APPELLEE**

K. James Sullivan
Christopher S. Williams
Eric S. Zell
Calfee, Halter & Griswold LLP
800 Superior Avenue
Suite 1400
Cleveland, Ohio 44114

LARRY A. JONES, J.:

{¶ 1}  Plaintiff-appellant, Watch Tower[1] Bible and Tract Society of Pennsylvania ("Watch Tower"), appeal the trial court's decision denying its motion for summary judgment and granting summary judgment in favor of defendant-appellee, Fifth Third Bank.   For the reasons that follow, we reverse.

{¶ 2}  Luther Loy Dietrich ("Dietrich") had two bank accounts with Fifth Third

---

[1]There is a discrepancy in the trial record whether the name of the Society is spelled "Watchtower" or "Watch Tower."   Since all trial court pleadings submitted by the Society and its appellate brief spell its name as two words, we will list the name as "Watch Tower" in this opinion.

Bank.  Dietrich originally designated his mother, Amelia Dietrich, as the beneficiary to the accounts in the event of his death.  The bank's computer system reflected that a change in the designation was made on March 24, 2005, naming Watch Tower as the beneficiary.  Per bank policy, however, to change his "Payable on Death" ("POD") beneficiary, Dietrich had to fill out a written beneficiary form and fill out a new signature card in order to supersede a prior POD designation.

{¶ 3}  Dietrich died on October 24, 2005.  At that time, his accounts totaled $99,865.79.  The bank sent notice to Watch Tower informing the society that the bank's records indicated Watch Tower was the beneficiary of Dietrich's accounts.  Dietrich's estate, however, believed that the accounts belonged to the estate.  In March 2006, Fifth Third decided to place a hold on the accounts until either the estate and Watch Tower came to a written agreement regarding ownership of the accounts, or the bank was directed by a court on how to distribute the funds.

{¶ 4}  Subsequently, the estate filed a concealment action against Fifth Third Bank in probate court pursuant to R.C. 2109.50.  Watch Tower was not named in the lawsuit. Watch Tower did retain one of its volunteer attorneys for the purpose of filing a notice of appearance at a pretrial hearing.

{¶ 5}  In June 2006, the probate court issued a judgment entry, which read, in part:

> "The Court finds that there is no written contract or other agreement or obligation between Luther Loy Dietrich and Fifth Third Bank whereby the funds contained in the Fifth Third Bank [a]ccounts * * * became payable to Watch Tower Bible and Tract Society of Pennsylvania or any other individual or entity upon the death of Luther Loy Dietrich.  Consequently, the Funds belong to the Estate of Luther Loy Dietrich, and Fifth Third Bank is ordered to release the Funds * * * ."

**{¶ 6}** The bank subsequently released the funds to the estate.

**{¶ 7}** In November 2008, Watch Tower filed suit against Fifth Third setting forth claims for negligence, breach of contract, conversion, and tortious interference with an expectancy. Watch Tower moved for summary judgment. Fifth Third also moved for summary judgment, arguing, in part, that Watch Tower was estopped from bringing their claims. The trial court granted summary judgment in favor of the bank and issued a written opinion.

**{¶ 8}** It is from this judgment that Watch Tower now appeals, raising the following assignments of error for our review:

"I. The trial court erred in holding that the doctrine of collateral estoppel applies to the case at bar.

"II. The trial court erred in holding that Watch Tower had a duty to intervene in the concealment case.

"III. The trial court erred in denying Watch Tower's motion for summary judgment."

Standard of Review

**{¶ 9}** Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶8. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶12. Under Civ.R. 56(C), summary judgment is proper when the moving party establishes that "(1) no

genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶9, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267.

## Collateral Estoppel

{¶ 10} In the first and second assignments of error, Watch Tower argues that the trial court erred in finding that they were estopped from bringing forth its claims and holding that Watch Tower had a "duty" to intervene in the probate court case.

{¶ 11} The doctrine of res judicata involves both claim preclusion, which historically has been called estoppel by judgment, and issue preclusion, which traditionally has been referred to as collateral estoppel. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381, 1995-Ohio-331, 653 N.E.2d 226. Under the claim preclusion branch of res judicata, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Id. at the syllabus.

{¶ 12} Issue preclusion, or collateral estoppel, precludes relitigation of an issue that has been "actually and necessarily litigated and determined in a prior action." *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 107, 538 N.E.2d 1058. In other words, under the

doctrine of collateral estoppel, the party is precluded from relitigating in a second action an issue that has been actually and necessarily litigated and determined in a prior action. *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 1998-Ohio-435, 692 N.E.2d 140, citing *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 112, 254 N.E.2d 10.

{¶ 13} In the case at bar, the trial court found that Watch Tower's claims were barred by collateral estoppel. In order to prevail under the doctrine of collateral estoppel, a party must plead and prove the following: (1) the party against whom estoppel is sought was a party or in privity with a party to the previous case; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) the issue must have been identical to the issue involved in the previous case. *Balboa Ins. Co. v. S.S.D. Distrib. Sys., Inc.* (1996), 109 Ohio App.3d 523, 527-28, 672 N.E.2d 718.

{¶ 14} Watch Tower argues that the issues of the Bank's negligence, conversion, breach of contract, and tortious interference with an expectancy were never litigated in the probate court; therefore, the doctrine of collateral estoppel cannot apply to bar them from bringing these claims. According to Watch Tower, it never claimed a right to the proceeds of Dietrich's accounts. Instead, the society claimed that it suffered damages due to the bank's actions and, but for the conduct of the bank and/or its employees, it would have been the beneficiary of the accounts. Watch Tower further submits that it

was only after the probate court's judgment did its causes of action arise because it was then that the society learned that Fifth Third acted negligently.

{¶ 15} Fifth Third claims that although Watch Tower was not a party to the probate court case, they were in privity because, for the purposes of collateral estoppel, privity applies both to the litigants and to those who could have entered the proceeding but did not avail themselves of the opportunity. *Howell v. Richardson* (1989), 45 Ohio St.3d 365, 367, 544 N.E.2d 878. We disagree with Fifth Third's contention, however, and find that the bank cannot show that Watch Tower was collaterally estopped from bringing their claims.

{¶ 16} Michael Lewis, Watch Tower's manager of charitable planning, testified at deposition that Watch Tower became aware of the probate case shortly after it was filed. In a letter dated March 27, 2006, Watch Tower wrote its Ohio agent, attorney William Carse, as follows:

> "We would like to retain your services for the purpose of filing a notice of appearance on behalf of Watch Tower Bible and Tract Society of Pennsylvania, and appearing at the May 2006, hearing at [probate court] with regard to the [Fifth Third] matter."

{¶ 17} Although Carse may have acted as Watch Tower's agent in keeping a close eye on the proceedings, at no time did Watch Tower intervene in the case. Carse testified at deposition that he attended pretrial conferences and kept Watch Tower updated on the status of the litigation, but was never informed that the case had been settled in the estate's favor. Neither the estate nor Fifth Third moved to have Watch Tower added as a party and the probate court docket indicates that no formal hearings were held in the case.

Shortly after it was filed, the case was "settled and dismissed," and proceeds of the account were paid to the estate.

{¶ 18} We disagree with the trial court's determination that Watch Tower had a duty to intervene in the probate court case in order to protect its interests and that because Watch Tower "was both aware of the litigation and had an opportunity to intervene," it was required to intervene in order to protect its claim. Watch Tower argues that its claims did not arise until the probate court determined that the account funds belonged to the estate. Only then did the society learn that Fifth Third allegedly acted negligently in failing to secure proper documentation for a POD designation. Thus, it may have been a strategic decision on the part of the society to wait and see to whom the probate court would award the account proceeds before pursuing its claims.

{¶ 19} We further find no merit to the bank's contention that Watch Tower was either required to intervene in the probate court case or otherwise file its claims at the time of the probate court case. The statute of limitations applicable to Watch Tower's claims had not expired at the time it filed its lawsuit; there is no requirement that the society file its claims at any time prior to the day the statute of limitations expires. If Fifth Third was concerned about what rights Watch Tower may have had to the accounts, it could have filed a declaratory judgment action in common pleas court.

{¶ 20} We further note that because the probate court case was a concealment case brought pursuant to statute, it is possible that the probate court would not have had jurisdiction to consider Watch Tower's claims. The purpose of the concealment statute,

R.C. 2109.50, "is to provide a speedy and effective method of discovering assets belonging to an estate and securing possession of such assets. It is not intended as a substitute for a civil action to collect a debt, obtain an accounting, adjudicate rights under a contract or recover judgment for money owing an executor or administrator." *Harpster v. Castle* (June 28, 1993), Ashland App. No. CA 1022; *Goodrich v. Anderson* (1940), 136 Ohio St. 509, 26 N.E.2d 1016.[2]

{¶ 21} Although what entity should be designated the beneficiary of Dietrich's accounts was the crux of the probate court case, it bears repeating that Watch Tower is not claiming that it was the proper POD beneficiary. Instead, Watch Tower claims that the intended bequest to Watch Tower from Dietrich was not consummated due to the bank's negligence. We agree with Watch Tower that these are two separate issues; therefore, Watch Tower is not estopped from bringing its claims. Moreover, it could be argued that Watch Tower could have participated in the probate court proceedings and still subsequently filed an action for negligence.

{¶ 22} Based on the facts as presented, Fifth Third cannot prevail under the doctrine of collateral estoppel; therefore, the trial court erred in determining that Watch Tower was collaterally estopped from pursuing its claims against Fifth Third.

{¶ 23} The first and second assignments of error are sustained.

### Summary Judgment

---

[2]It is unnecessary at this time to determine whether the probate court would have had jurisdiction over Watch Tower's claims.

{¶ 24} In the third assignment of error, Watch Tower argues that the trial court erred in denying its motion for summary judgment.

{¶ 25} We find that questions of material fact remain whether Fifth Third acted negligently in failing to secure a proper POD designation. Brenda Harris, the employee who changed Dietrich's POD designation, testified that she could not remember meeting Dietrich, but the bank's records indicate that she handled the transaction. Harris was aware that the bank's policy and procedures required written authorization and a new signature card in order to change a POD designation, but the bank could not locate either. Harris could not remember if Dietrich actually filled out a new signature card, but testified that she would not change a POD designation without the consent of the customer. She also admitted that she could not remember personally looking for the signature card but her records indicated the bank had searched for it. Thus, the issue of whether the bank and/or its employees acted negligently in failing to properly change Dietrich's POD designation is a question of fact best suited for a jury to determine.

{¶ 26} Because questions of material fact remain that preclude summary judgment, the trial court did not err in denying Watch Tower's motion for summary judgment.

{¶ 27} Accordingly, the third assignment of error is overruled.

Judgment is reversed and remanded.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga

County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

LARRY A. JONES, JUDGE

MARY EILEEN KILBANE, A.J., CONCURS;
KATHLEEN ANN KEOUGH, J., DISSENTS
WITH SEPARATE OPINION

KATHLEEN ANN KEOUGH, J., DISSENTING

{¶ 28} I respectfully dissent. Although I agree with the majority that the doctrine of collateral estoppel does not apply in this matter, I would nevertheless find that the trial court properly granted Fifth Third's motion for summary judgment. Under our de novo standard of review, I would find that Watch Tower's complaint is barred by the doctrine of laches, which was also raised by Fifth Third in its motion for summary judgment.

{¶ 29} Laches is "'an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party.'" *Connin v. Bailey* (1984), 15 Ohio St.3d 34, 35, 472 N.E.2d 328, quoting *Smith v. Smith (1957)*, 107 Ohio App. 440, 443-444, 146 N.E.2d 454. See, also, *Hayman v. Hayman*, 184 Ohio App.3d 97, 2009-Ohio-4855, 919 N.E.2d 797, ¶47.

{¶ 30} "'The elements of the defense of laches are '(1) conduct on the part of the defendant * * * giving rise to the situation of which complaint is made and for which the

complainant seeks a remedy * * *; (2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of defendant's conduct and having been afforded an opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit; and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant.'"

*Smith v. Smith* (1959), 168 Ohio St. 447, 455, 156 N.E.2d 113, quoting 19 American Jurisprudence, [1939] 343, [Equity] Section 498; see, also, *State ex rel. Cater v. N. Olmsted*, 69 Ohio St.3d 315, 325, 1994-Ohio-488, 631 N.E.2d 1048 ("elements of a laches defense are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for such delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party").

{¶ 31} Delay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim.  *Hayman* at ¶47, citing *Connin* at ¶35-36; see, also, *Smith*, 168 Ohio St. at paragraph three of the syllabus.

{¶ 32} "Issues of waiver, laches, and estoppel are 'fact-driven.'"  *Riley v. Riley*, Knox App. No. 2005-CA-27, 2006-Ohio-3572, ¶27, quoting *Dodley v. Jackson*, Franklin App. No. 05AP11, 2005-Ohio-5490.   Once a defendant has set forth each of the elements of the defense, the burden shifts to the plaintiff to explain away the delay.  *Stevens v. Natl. City Bank* (1989), 45 Ohio St.3d 276, 285, 544 N.E.2d 612, citing *Russell v. Fourth*

*Natl. Bank* (1921), 102 Ohio St. 248, 131 N.E. 726.

{¶ 33} Fifth Third argues that it was unreasonable for Watch Tower to wait for two years after Fifth Third distributed the proceeds of Dietrich's bank accounts to Dietrich's estate to assert its right to those accounts, when Watch Tower knew that ownership of Dietrich's bank accounts was at issue in the probate court proceeding and Watch Tower participated in those proceedings. Watch Tower counters by contending that it filed its complaint against Fifth Third within the applicable statute of limitations and that any delay or prejudice was attributable to Fifth Third for its failure to join Watch Tower in the probate action.

{¶ 34} Filing an action within the statute of limitations time frame is not in and of itself sufficient to defeat a defense of laches. "Delay for a shorter period than the statutory limit, accompanied by other conditions, may be sufficient to destroy the beneficiary's remedy." *Stevens* at 284. Accordingly, laches may still apply even though the applicable statute of limitations has not run.

{¶ 35} I find it irrelevant whether Fifth Third or Dietrich's estate should have petitioned the probate court to join Watch Tower in the probate proceeding because Watch Tower did, in fact, participate in the proceeding through Attorney Carse. I agree with the trial court that Watch Tower had a duty to intervene or request joinder considering that the underlying issue in the probate court was whether Dietrich's bank accounts were assets of his estate. When Watch Tower recognized that it was not being joined in the action, it had a duty to assert its right because an action for concealment under R.C. 2109.50 focuses

first on ownership of the asset and then on whether possession of the asset is being impermissibly concealed or withheld from the estate. See *Fecteau v. Cleveland Trust Co.* (1960), 171 Ohio St. 121, 167 N.E.2d 890 (ownership of joint and survivorship bank accounts were properly brought in probate court under concealment statute).

{¶ 36} Moreover, the record demonstrates that the probate court converted the concealment action to a declaratory judgment action because (1) the deposition of Attorney Carse indicated that the magistrate converted the matter as such; and (2) the trial court's journal entry made a finding regarding ownership of Dietrich's bank accounts and did not make any finding regarding Fifth Third's guilt. Because the probate court seemingly converted the action to a declaratory judgment, Watch Tower had even more of a duty to intervene because it had an interest in the asset to which Dietrich's estate was claiming ownership.

{¶ 37} Both Watch Tower and Dietrich's estate sent letters to Fifth Third claiming ownership of Dietrich's bank accounts and demanded distribution. On March 3, 2006, Fifth Third sent a letter to both parties explaining the disagreement regarding who is the correct and legal beneficiary under the accounts, the reason for the dispute (the signature card is missing), and the action Fifth Third was taking (placing distribution on hold until an agreement between the parties was reached or until it receives a court order directing distribution). Thus, all parties were on notice of the legal situation, the reasons why the problem existed, and Fifth Third's intentions. Accordingly, Watch Tower was on notice as early as March 3, 2006 that Fifth Third was unable to locate the signature card, which is

the underlying basis for Watch Tower's complaint against Fifth Third.

{¶ 38} On March 7, 2006, the estate filed a concealment action in probate court against Fifth Third claiming that it was concealing assets belonging to the estate. Michael Lewis, who testified at deposition on behalf of Watch Tower testified that Watch Tower became aware of the probate case from Fifth Third's attorney in March 2006.

{¶ 39} Attorney Carse testified at his deposition that he was contacted by Watch Tower to observe the concealment proceedings in probate court and report back to Watch Tower's legal department. Attorney Carse received a letter dated April 6, 2006 from Watch Tower with Ohio case law enclosed "that [Watch Tower] hope[d] [would] prove helpful to you in the matter of Luther Dietrich and Fifth Third." In a subsequent letter Watch Tower sent Attorney Carse on April 27, 2006, it sought to "retain [his] services for the purpose of filing an appearance on behalf of Watch Tower Bible and Tract Society of Pennsylvania, and appearing at the May 2006, hearing at Cuyahoga County Probate Court with regard to the *Fried v. Fifth Third Bank* matter. We appreciate your assistance in this regard."

{¶ 40} No appearance was ever filed, but Attorney Carse testified at deposition that Watch Tower admittedly had an interest in the outcome of the litigation or he would not have been there. Even with this knowledge, Watch Tower did not assert its claim to Dietrich's bank accounts, but just watched the asset and its interest disappear. Therefore, irrespective of whether Attorney Carse acted as a mere observer or as Watch Tower's attorney in the probate proceedings, Watch Tower had actual knowledge of the nature of

the probate proceedings, the claim made by Dietrich's estate regarding ownership of Dietrich's bank accounts, and the possible adverse and detrimental effect the outcome of the proceedings could have on its interest and receipt of the proceeds from those accounts.

{¶ 41} Finally, Watch Tower's assertion that it did not know that Fifth Third had paid Dietrich's estate is not a sufficient excuse justifying its delay in filing the within action, and does not create a genuine issue of material fact. Watch Tower knew that the decision of the probate court was adverse to Watch Tower as early as June 5, 2006 because Attorney Carse sent Watch Tower's legal department a letter outlining the magistrate's opinion from the June 1, 2006 hearing and also advising Watch Tower that the magistrate asked him to "confer with Watch Tower and respond to all parties." Attorney Carse's subsequent correspondence on June 12, 2006 indicated that Carse was an active participant in the proceedings because he "would be calling the parties in a week or so to see if they reached an agreement" and advised the attorney for Fifth Third "that Watch Tower was keeping its options open."

{¶ 42} The evidence attached to Fifth Third's motion for summary judgment establishes that Watch Tower knew that it was listed as the POD beneficiary under Dietrich's Fifth Third bank accounts and that Dietrich's estate was also asserting a claim to those accounts. Rather than defend or assert a claim to the contested asset, Watch Tower sat idly by and acquiesced to the probate court's determination. The situation presented before this court is precisely the purpose for the doctrine of laches — to prevent acquiescence or neglect in asserting a right for a period of time that prejudices an adverse

party.

{¶ 43} Accordingly, because Watch Tower knew of the probate proceedings and understood that its outcome could adversely affect its interest in Dietrich's bank accounts, I would find its excuse for delay is only attributable to itself for its own failure to join or intervene. Moreover, Watch Tower's transfer of blame to Fifth Third is insufficient to rebut Fifth Third's defense of laches. Watch Tower "'was fully put upon inquiry, and the hardship of which [it] complains is the result of [its] own negligence and imprudence. "'Courts of equity give relief to the vigilant, not to the negligent. They refuse their aid to those who by their own negligence, and by that alone, have incurred a loss. 1 Story's Eq.Jur.Sec. 146, and notes.'" *Stevens* at 285, quoting *Crist v. Dice* (1869), 18 Ohio St. 536, 542.

{¶ 44} Finally, Fifth Third has demonstrated material prejudice due to Watch Tower's delay in filing this cause of action. Fifth Third argues that due to Watch Tower's failure to assert its claim in the probate matter, it will potentially have to pay on the same account twice. This possible detrimental change in Fifth Third's financial position would not have occurred had Watch Tower timely asserted its right to Dietrich's bank accounts.

{¶ 45} Additionally, under the doctrine of res judicata, Fifth Third will not be able to assert that Watch Tower is the rightful and legal owner of Dietrich's bank accounts because the probate court already determined that Dietrich's estate is the beneficiary of those accounts. This is prejudicial to Fifth Third because had Watch Tower asserted a

claim to the asset and defended its position in the probate action, the result quite possibly would have been different.

**{¶ 46}** Watch Tower has not raised any argument to rebut the prejudice established by Fifth Third, but only reiterates that any prejudice was because of Fifth Third's failure to join Watch Tower. Having found that Fifth Third owed no duty to put forward or defend Watch Tower's rights in probate court or assert Watch Tower's claim to Dietrich's bank accounts, I would find that Watch Tower's joinder argument is insufficient to establish a genuine issue of material fact thereby defeating summary judgment.

**{¶ 47}** Accordingly, I would find that summary judgment in favor of Fifth Third was proper.