**JACKS et al., Appellees,**

v.

**BREWINGTON et al., Appellants.**

[Cite as *Jacks v. Brewington*, 177 Ohio App.3d 844, 2008-Ohio-4393.]

Court of Appeals of Ohio,
Second District, Champaign County.

No. 07–CA–28.

Decided Aug. 29, 2008.

Ronald C. Tompkins and Darrell L. Heckman, for appellees.

Steven R. Fansler, for appellants.

BROGAN, Judge.

{¶ 1} Leona M. Roberts appeals from a judgment of the Champaign County Court of Common Pleas, which held that Roberts's home encroached on the property of Luther and Helen Jacks by two feet, that Roberts acquired title to the land upon which the house was built by adverse possession, and that Roberts had otherwise failed to establish that she owned the property west of the property line by adverse possession. For the following reasons, the order that Roberts remove or alter the improvements to her property to the extent that the improvements encroach upon the Jackses' property will be vacated, and the matter will be remanded to the trial court to determine whether an encroachment exists and, if so found, to determine its extent and order an appropriate remedy. In all other respects, the trial court's judgment will be affirmed.

I

{¶ 2} Luther and Helen Jacks own real property, commonly known as 6483 Crowl Road, in the village of Springhills in Champaign County. They have resided on the property since 1958. Judy Brewington is the Jackses' neighbor to the west, residing at 6493 Crowl Road. Brewington purchased the property in 1987. Since 1995, Leona Roberts has been the Jackses' neighbor to the east, residing at 6473 Crowl Road.

{¶ 3} After Roberts constructed a wooden deck, wooden walkway, and "fence deck" on the back of her house, the Jackses had a survey of the properties conducted by Wallace Lynn Geuy, a professional surveyor. The survey indicated that the property lines were east of what the parties had previously believed.

{¶ 4} Following the survey, the Jackses filed this action against Roberts, claiming that the deck extended 5½ feet onto their land and the fence extended three feet onto their land. The Jackses also alleged that Roberts's home encroached on their property by two feet. Roberts answered that she owned the residential real estate by adverse possession, and she denied that the deck encroached on the Jackses' property. The Jackses also brought suit against Brewington, alleging that she had wrongfully removed an old wire fence and built a new six-foot privacy fence that encroached on the Jackses' property by two feet.

{¶ 5} After a bench trial, the trial court concluded that the Jackses had acquired the property between Brewington's new fence line and the line demarcated by the old wire fence by adverse possession. Brewington was ordered to remove the fence. As to Roberts, the trial court determined that she had acquired title to the property on which her house sat by adverse possession. The court found, however, that Roberts did not demonstrate that she had adversely possessed any other area of disputed property. The court noted that the deck did not extend as far west as the house, and it stated in a footnote that "it is possible that the recent improvements do not actually encroach on the Plaintiffs' property." The court ordered Roberts to remove her improvements "[t]o the extent improvements (with the exception of the house) encroach upon Plaintiffs' land."

{¶ 6} Roberts appeals, raising two assignments of error. Brewington has not appealed the trial court's judgment.

## II

{¶ 7} Roberts's first assignment of error states:

{¶ 8} "Plaintiffs failed to meet the requisite burden of proof to show that defendant Roberts' improvements, including the wooden deck, encroach upon their property."

{¶ 9} In her first assignment, Roberts claims that the trial court made no finding that her improvements encroached on the Jackses' property and that the trial court cannot create a conditional obligation on Roberts to remove any improvements that encroach. Roberts asserts that the trial court determined only that the house encroached by two feet and that the deck did not extend as far as the house. She emphasizes that the court stated in a footnote that "it is possible that the recent improvements do not actually encroach on the Plaintiffs' property."

{¶ 10} The Jackses respond that "[t]he trial court made an equitable determination of the parties' rights to the contested strip of real property and that determination, barring clear evidence of error in the record of the proceedings, should not be disturbed."

{¶ 11} In addressing the property dispute between the Jackses and Roberts, the trial court made the following findings:

{¶ 12} "37. See items one and two, above [stating that the Jackses have owned their property since 1958].

{¶ 13} "38. Defendant Roberts is the owner of certain real property (abutting the eastern property line of Plaintiffs' property), described by deed as 'the west

one-half of Lots Number 29 and 30 as the same are known and designated on the recorded plat of the Village of Springhills, Champaign County, Ohio.'

{¶ 14} "39. Defendant Roberts has owned said property since 1995.

{¶ 15} "40. According to the Geuy survey, the accuracy of which has not been disputed by the parties, Defendant Roberts' house encroaches onto Plaintiffs' property by approximately two feet.

{¶ 16} "41. Plaintiffs contend that Defendant Roberts's recent improvements, such as the wooden deck, also encroach upon Plaintiff's [sic] property.

{¶ 17} "42. The Court notes that the deck does not extend as far west as the home. [fn4]

{¶ 18} "43. The Court finds the Geuy survey accurately depicts the properties' boundaries.

{¶ 19} "44. To the extent that Defendant Roberts claims ownership of any property to the west of the Jacks–Roberts property line as demonstrated in the Geuy survey, Defendant Roberts bears the burden of proof in her adverse possession claim.

{¶ 20} " * * *

{¶ 21} "48. In the present case, Defendant Roberts' home was built approximately 100 years ago. The Court does not find that said construction was allowed under a contract or license or that permission therefor was otherwise granted.

{¶ 22} "49. Pursuant to Rader, the Court finds that Defendant Roberts and her predecessors have adversely possessed the part of the land encroached by the home's placement thereon and, therefore, Defendant Roberts possesses title thereto. [Citation omitted]

{¶ 23} "50. The Court finds that Defendant Roberts has **not** demonstrated, by clear and convincing evidence, that she or her predecessors in title have adversely possessed any area other than that upon which the house was built.

{¶ 24} " * * *

{¶ 25} "55. To the extent improvements made by Defendant Roberts encroach upon Plaintiffs' property, Defendant Roberts is hereby ordered to remove or alter said improvements so as to remove them from Plaintiffs' land."

{¶ 26} Footnote four in paragraph 42 states: "The Court notes it is possible that the recent improvements do not actually encroach on the Plaintiffs' property. Although the house, apparently, encroaches by two feet, it appears from the photographs and other evidence that the other improvements do not extend as far west."

{¶ 27} Although the Jackses apparently read the trial court's ruling as stating that the wooden deck encroaches on their property and the encroaching portion must be removed, we find no such finding. The trial court established the property line between the Jackses' and Roberts's property, and expressly found that Roberts's house encroached by two feet. However, the court made no finding about the location of Roberts's improvements relative to the property line, other than a general statement that the improvements were west of the edge of the house (away from the property line). There is no express finding that Roberts's improvements encroached on the Jackses' property, nor did the trial court state the extent of any encroachment. To the contrary, the trial court indicated that it appeared possible that no encroachment existed. Without a finding that Roberts's improvements encroached upon the Jackses' property, the trial court erred in ordering Roberts to remove or alter her improvements "to the extent improvements * * * encroach upon Plaintiffs' land."

{¶ 28} The first assignment of error is sustained.

### III

{¶ 29} Roberts's second assignment of error states:

{¶ 30} "Plaintiff owned up to the fence, which was the boundary line between her property and plaintiffs' property by adverse possession."

{¶ 31} In her second assignment of error, Roberts claims that the trial court should have found that she owned the two-foot wide area along the property line that the Geuy survey indicated was owned by the Jackses but was located on Roberts's side of the wire fence between the properties. Roberts notes that the Jackses obtained ownership of a similar area along the property line between the Jackses and the Brewingtons by adverse possession.

{¶ 32} Adverse possession is established when a party proves by clear and convincing evidence exclusive possession that is open, notorious, continuous, and adverse for a period of 21 years. *Houck v. Bd. of Park Commrs. of the Huron Cty. Park Dist.*, 116 Ohio St.3d 148, 2007-Ohio-5586, 876 N.E.2d 1210, at ¶ 10; *Grace v. Koch* (1998), 81 Ohio St.3d 577, 579, 692 N.E.2d 1009. In order to establish the 21–year possession, an individual may "tack" to his period of adverse use the adverse use by previous owners in privity with him. *Lyman v. Ferrari* (1979), 66 Ohio App.2d 72, 76, 20 O.O.3d 138, 419 N.E.2d 1112, citing *Zipf v. Dalgarn* (1926), 114 Ohio St. 291, 296, 151 N.E. 174. Adverse use can be any use that is inconsistent with the rights of the title owner. *Vanasdal v. Brinker* (1985), 27 Ohio App.3d 298, 27 OBR 343, 500 N.E.2d 876, citing *Kimball v. Anderson* (1932), 125 Ohio St. 241, 244, 181 N.E. 17. Moreover, it is irrelevant if everyone believes the owner of the strip of land in question to be the party

claiming adverse possession. *Vanasdal,* 27 Ohio App.3d at 299, 27 OBR 343, 500 N.E.2d 876. This is true because adverse possession protects not only those who knowingly appropriate others' land but also individuals who honestly enter and possess land in the belief that it is their own. *Raymond v. Cary* (1989), 63 Ohio App.3d 342, 343, 578 N.E.2d 865; see also *Vanasdal,* 27 Ohio App.3d at 299, 27 OBR 343, 500 N.E.2d 876.

{¶ 33} At the trial, Roberts testified that she purchased her property on August 21, 1995 at an auction conducted by Bob and Ruby Barthauer. Roberts indicated that the wire fence between the Jackses' and Roberts's properties existed at the time of the auction, and the auctioneer indicated that he was selling "everything within the fence." Roberts testified that the Jackses never told her that their property extended past the fence, even though they attended the auction. Since the auction, the Jackses have not come onto the property on Roberts's side of the fence. Although the Jackses complimented Roberts on her improvements to her home, including new siding, they did not mention that the house sat on their side of the property line. Although a gate existed in the wire fence, Roberts stated that no one has used the gate in the last 10 years.

{¶ 34} Stephen Snapp, Roberts's brother, also testified that the auctioneer informed Roberts that she owned "everything inside the fence." Robert Snapp, Ann Snapp (Roberts's mother), and Mark Organ all testified that Roberts has maintained the property on her side of the fence.

{¶ 35} Lloyd Stotler, who has lived at 6464 Crowl Road since 1978, testified that Frank Mohr and his daughter, Helen Fitzsimmons, used to live in the house owned by Roberts. Fitzsimmons owned the property after her father died, and Roberts purchased it from Fitzsimmons at an auction. Stotler testified that the Jackses put the fence between the properties onto their property when Mohr needed to put in a dry well, and the Jackses installed a gate so they could maintain both sides of fence. Stotler indicated that he had seen the Jackses mowing Roberts's side of the fence. The Jackses mowed Fitzsimmons's (now Roberts's) entire yard since 1980 or earlier.

{¶ 36} Helen Jacks testified that she and her husband had an arrangement with Mohr where Mohr would install T posts that indicated the property line, but the fence would be installed on the Jackses' property. She stated: "[W]e'd maintain the 5 feet over on the other side [of the fence] and he had the T post up, and he said that would be the lot. He put the T post up and said that would be the line but he wanted no fence on it." Jacks stated that they had maintained the 5 feet on Roberts's side of the fence, and Mohr asked permission whenever he wanted to do something to the house. Jacks indicated that Mohr died in 1961. The Jackses started mowing Fitzsimmons's entire yard in 1970 due to Fitzsimmons's failing health. The T posts were pulled out when Roberts bought the

property. However, the Jackses continued to mow the 5 feet until Roberts installed the wooden deck. Jacks acknowledged that she never informed Roberts that the fence was not on the property line until Roberts installed her deck.

[6] {¶ 37} Upon review of the evidence, we find no fault with the trial court's conclusion that Roberts did not establish ownership by adverse possession. Although Roberts's testimony indicated that she had adversely possessed the property on her side of the fence since her purchase in 1995, the Jackses presented evidence that Mohr and Fitzsimmons did not adversely possess the property. Jacks's and Stotler's testimonies indicated that Mohr and the Jackses understood that the fence was not on the property line and that the Jackses maintained the property on Roberts's side of the fence during Mohr's and Fitzsimmons's ownership. Although Jacks acknowledged that they had maintained all of Fitzsimmons's property for a long period of time due to Fitzsimmons's failing health, there is no evidence that the Jackses had stopped maintaining the disputed property as their own property. In short, accepting Jacks's and Stotler's testimonies, the trial court reasonably concluded that Roberts had not established that the disputed property had been adversely possessed by Roberts and her predecessors for a period of 21 years.

{¶ 38} The fact that the Jackses successfully obtained the property up to the old fence line between their property and the Brewingtons' property is irrelevant to Roberts's claim. The Jackses presented evidence that they had continuously mowed and maintained the property up to the former fence line until 2002, i.e., for more than 21 years. Roberts did not present similar evidence.

{¶ 39} The second assignment of error is overruled.

IV

{¶ 40} Having sustained Roberts's first assignment of error, the order that Roberts remove or alter the improvements to her property to the extent that the improvements encroach upon the Jackses' property will be vacated, and the matter will be remanded to the trial court to determine whether an encroachment exists and, if so found, to determine its extent and order an appropriate remedy. In all other respects, the trial court's judgment will be affirmed.

Judgment affirmed in part,
and vacated in part
and remanded.

WOLFF, P.J., and GRADY, J., concur.