[Cite as *Schaffer v. Wietzel*, 2019-Ohio-572.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

MARK S. SCHAFFER, et al.                    :

    Plaintiffs-Appellees                    :     Appellate Case No. 2018-CA-28

                                            :

v.                                          :     Trial Court Case No. 2016-CV-397

                                            :

MICHAEL J. WIETZEL, et al.                  :     (Civil Appeal from
                                            :     Common Pleas Court)

    Defendants-Appellants                   :

                                            :

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of February, 2019.

. . . . . . . . . . .

CHARLES F. ALLBERY, III, Atty. Reg. No. 0006244, 893 South Main Street, Suite 386, Englewood, Ohio 45322
    Attorney for Plaintiffs-Appellees

MICHAEL R. ECKHART, Atty. Reg. No. 0031450, 5335 Far Hills Avenue, #109, Dayton, Ohio 45429
    Attorney for Defendants-Appellants

. . . . . . . . . . . . .

WELBAUM, P.J.

**{¶ 1}** Defendant-appellants, Michael J. Wietzel and Deborah A. Wietzel, appeal from a judgment of the Greene County Court of Common Pleas awarding plaintiff-appellees Mark S. Schaffer and Margery M. Schaffer title by adverse possession to a portion of land where the Schaffers' driveway is located. The Wietzels argue that the trial court's adverse possession ruling was in error because the evidence presented at trial failed to establish that the disputed land was exclusively and adversely possessed for a period of 21 years. The Wietzels also claim that the adverse possession ruling was generally against the manifest weight of the evidence. For the reasons outlined below, the judgment of the trial court will be affirmed.

### Facts and Course of Proceedings

**{¶ 2}** This case concerns an asphalt driveway that leads to a residence located at 2542 Stewart Road, Sugarcreek Township, Greene County, Ohio ("the residence"). The residence is currently owned by the Schaffers. The Schaffers purchased the residence in 2006 from Eric Mundy. Eric inherited the residence from his father Harry Mundy after Harry's death in 2005. Harry and his wife Ernestine Mundy had lived at the residence since it was built in 1984.

**{¶ 3}** The residence is located on approximately one acre of land that was part of acreage purchased by the Sugar Valley Country Club ("the Country Club") in 1975. In 1978, the Country Club sold the acreage to Green Tree Development, Inc. ("Green Tree") for purposes of residential development. Green Tree then sold one acre of the property to Harry and Ernestine Mundy. A year later, the remaining acreage was divided into 14

separate lots. Lots 1 and 2 are adjacent to the acre that Green Tree sold to the Mundys.

{¶ 4} After purchasing the acre from Green Tree, Harry Mundy spent the next six years building the residence on the property. Upon its completion in 1984, the residence included an asphalt driveway that connected the residence to Stewart Road. The driveway is the sole means by which vehicles can access the residence. It is undisputed that part of the driveway encroaches on Lot 2. No action was ever taken by Green Tree regarding the encroachment on Lot 2.

{¶ 5} In 2010, Sugar Valley Partners, LLC ("Sugar Valley") formed and became the owner of Lot 2. In 2011, Foreman Family Enterprises, LLC ("Foreman Family") acquired Lot 2 from Sugar Valley. Foreman Family then sold Lot 2 to the Wietzels in 2013. Sometime after the sale, the Wietzels became aware that the Schaffers' driveway encroached on their property. In 2014, the Wietzels advised the Schaffers of the encroachment. The Schaffers then had a survey performed for purposes of preparing an easement for the driveway; however, the easement never materialized. The Schaffers instead filed a quiet title action against the Wietzels asserting ownership of the disputed property on the basis of adverse possession.

{¶ 6} On October 2, 2017, the matter proceeded to a bench trial before a trial court magistrate. At trial, both Mark and Margery Schaffer testified that their driveway is exclusively used for their residence. Mark specifically testified that the Wietzels and members of the neighboring Country Club are not invited to use the driveway. Mark maintained that the driveway was "not a thoroughfare for any party" and that only invitees are permitted on the driveway for purposes of deliveries, service calls, and visits from friends or family. Trial Trans. p. 15. Mark further testified that he used the driveway

without any permission from Sugar Valley and that there was no indication the driveway was not a part of the residence when he purchased the residence in 2006. Mark and Margery both testified that they were not aware of the issue with the driveway until the Wietzels brought it to their attention in 2014.

{¶ 7} James Keys, a current partner of Sugar Valley and the managing member of the Country Club since 1978, also testified at trial. Keys testified that the Country Club was initially owned by three partners: Carl M. Foreman, Green Tree, and himself. During his testimony, Keys recalled the development plan for the acreage that the Country Club purchased in 1975 as well as the 1978 sale of land to the Mundys. Keys testified that in 1979, he approved Harry Mundy's building plan for the property he purchased from Green Tree. According to Keys, the approved building plan showed Harry's driveway connecting to a proposed private driveway for Lots 1 and 2. Keys confirmed that in order to connect to the proposed driveway, Harry's driveway would have had to come across Country Club/Green Tree land.

{¶ 8} Based on Harry's building plan, Keys testified that he believed Harry's driveway would be part of a driveway easement created for Lots 1 and 2. Although a driveway easement for Lots 1 and 2 was created in 1987, Keys testified that an easement for Harry's driveway was never created because the private driveway to Lots 1 and 2 was not installed at the time Harry's residence was constructed. Harry therefore deviated from the approved building plan and built the existing driveway that connects to Stewart Road.

{¶ 9} Keys testified that he never had a discussion with Harry about how Harry was going to get access to his residence without the driveway to Lots 1 and 2. Keys admitted

that he overlooked Harry's access issue because he was preoccupied with a zoning referendum that concerned Country Club/Green Tree property. Although Keys approved what was in Harry's building plan, Keys testified that he never gave Harry or the subsequent owners of the residence permission to install or use the driveway as it was built.

{¶ 10} Harry's son Eric also testified at trial. Eric testified that the driveway was gravel when construction of the residence began and that the gravel became compacted during the construction process. Eric recalled the driveway being blacktopped after the construction of the residence was complete. Eric testified that he did not know a portion of the driveway encroached on Lot 2 until he sold the residence to the Schaffers in 2006. Although he was aware of the encroachment at the time of the sale, Eric testified that he never discussed that issue with the Schaffers and that he did not know whether the realtor ever advised the Schaffers of the encroachment.

{¶ 11} In defending against the Schaffers' adverse possession claim, Michael Wietzel testified that prior to purchasing Lot 2, he had a conversation with Margery Schaffer while he and his wife were looking at Lot 2 with his realtor. Wietzel testified that during his conversation with Margery, she brought up the location of the driveway and stated that she was unsure if the driveway was on their property.

{¶ 12} Following trial, the magistrate took the matter under advisement and issued a decision granting the Schaffers title to the disputed property on the basis of adverse possession. The Wietzels filed objections to the magistrate's decision arguing, in part, that the magistrate's ruling was in error because the evidence presented at trial failed to establish that the Schaffers exclusively and adversely possessed the disputed property

for a period of 21 years. After conducting a de novo review of the evidence, the trial court overruled the Wietzels' objections and adopted the magistrate's decision.

{¶ 13} The Wietzels now appeal from the trial court's judgment, raising the following three assignments of error for review.

I. THE TRIAL COURT ERRED IN NOT APPLYING APPLICABLE LAW TO THE FACTS IN DETERMINING THAT PLAINTIFFS/ APPELLEES HAD ACQUIRED TITLE BY ADVERSE POSSESSION OVER A PART OF DEFENDANT APPELLANT'S LAND.

II. THE TRIAL COURT SHOULD NOT HAVE FOUND APPELLEES HAD OBTAINED TITLE BY ADVERSE POSSESSION BECAUSE OF THE EXCLUSIVITY REQUIREMENT WAS NOT PROVED (sic) BY CLEAR AND CONVINCING EVIDENCE.

III. THE TRIAL COURT'S DECISION FINDING APPELLEES ACQUIRED TITLED BY ADVERSE POSSESSION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN LIGHT OF THE CLEAR AND CONVINCING STANDARD REQUIRED.

**Standard of Review**

{¶ 14} " 'Typically, appeals on adverse possession claims challenge the manifest weight of the evidence supporting the various elements of adverse possession.' " *Violante v. Village of Brady Lake*, 11th Dist. Portage No. 2012-P-0054, 2012-Ohio-6220, ¶ 68, quoting *Pottmeyer v. Douglas*, 4th Dist. Washington No. 10CA7, 2010-Ohio-5293, ¶ 21. In this case, some of the arguments raised in the Wietzels' appellate brief are in

the nature of a manifest weight claim, while others appear to be legal in nature. When considering a manifest weight challenge, an appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial. (Citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the fact finder, which in this case was the trial court. *Id.* at ¶ 21. Therefore, this court will not substitute its judgment "for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). However, to the extent the Wietzels challenge the trial court's choice or application of law, this court's review is de novo. (Citation omitted.) *Pottmeyer* at ¶ 21.

## Adverse Possession Requirements

{¶ 15} "It is well established in Ohio that to succeed in acquiring title by adverse possession, the claimant must show exclusive possession that is open, notorious, continuous, and adverse for 21 years." *Evanich v. Bridge*, 119 Ohio St.3d 260, 2008-Ohio-3820, 893 N.E.2d 481, ¶ 7, citing *Grace v. Koch*, 81 Ohio St.3d 577, 579, 692 N.E.2d 1009 (1998). "Failure of proof as to any of the elements results in failure to acquire title by adverse possession." *Grace* at 579, citing *Pennsylvania R. Co. v. Donovan*, 111 Ohio St. 341, 349-350, 145 N.E. 479 (1924). All the elements of adverse possession must be proven by clear and convincing evidence. *Id.* at 580-581. "Clear and convincing

evidence is 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State ex rel. Pietrangelo v. Avon Lake*, 149 Ohio St.3d 273, 2016-Ohio-5725, 74 N.E.3d 419, ¶ 14, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**First Assignment of Error**

{¶ 16} Under their First Assignment of Error, the Wietzels challenge the trial court's adverse possession ruling on grounds that the disputed property was not possessed adversely for a period of 21 years. In support of this argument, the Wietzels claim the trial court misapplied the law governing the adverse element of adverse possession. The Wietzels also claim that the trial court improperly tacked on the use period of the disputed property's previous owners, the Mundys, to satisfy the 21-year possession requirement. We disagree.

{¶ 17} Although the Schaffers have not possessed the disputed property for 21 years, it is well established that to satisfy the 21-year possession requirement, an individual may "tack" to his period of adverse use the adverse use by previous owners in privity with him. (Citations omitted.) *Jacks v. Brewington*, 177 Ohio App.3d 844, 2008-Ohio-4393, 896 N.E.2d 226, ¶ 32 (2d Dist.). The Wietzels, however, argue that the trial court erred in tacking the Mundys' 22-year period of use to the Schaffers' period of use because the Mundys' period of use was not adverse. We find no merit to this claim.

{¶ 18} "Adverse use can be any use that is inconsistent with the rights of the title owner." (Citations omitted.) *Id.* at ¶ 32. "Adverse use is described as non-permissive use." (Citation omitted.) *Wischt v. Heirs of Mourer*, 2017-Ohio-8236, 98 N.E.3d 1307, ¶ 21 (5th Dist.). Therefore, if one uses land with permission of the title owner, it cannot be considered adverse use. *Fulton v. Rapp*, 59 Ohio Law Abs. 105, 98 N.E.2d 430, 431 (2d Dist.1950); *Tirpack v. Beavercreek Bd. of Edn.*, 2d Dist. Greene No. 91 CA 0070, 1992 WL 172160, *1 (July 24, 1992). "Whether a use of land is found to be adverse or permissive must depend upon all the facts disclosed by the evidence in a particular case." (Citation omitted.) *Quinter v. Soifer*, 2d Dist. Miami No. 80-CA-57, 1981 WL 2877, *4 (Aug. 12, 1981).

{¶ 19} Permission to use a title owner's property may be express or implied. *Shell Oil Co. v. Deval Co.,* 1st Dist. Hamilton Nos. C-980783, C-980809, 1999 WL 741814, *5 (Sept. 24, 1999). Although it has been held that the use of land "is not adverse if the landowner gave permission, for example, as a neighborly accommodation," *Nusekabel v. Cincinnati Pub. Sch. Emps. Credit Union, Inc.*, 125 Ohio App.3d 427, 433, 708 N.E.2d 1015 (1st Dist.1997), it has also been held that "a use does not necessarily become permissive simply because the property owner does nothing to prevent it out of indifference, laziness, acquiescence, or 'neighborly accommodation.' " *Shell Oil* at *4, quoting *Gerstenlager v. Lloyd*, 9th Dist. Summit No. 16814, 1995 WL 66284 (Feb. 15, 1995). *Accord EAC Properties, L.L.C. v. Hall*, 10th Dist. Franklin No. 08AP-251, 2008-Ohio-6224, ¶ 8. Therefore, "[i]t is proof that actual permission was granted that is determinative, * * * not the descriptive label of "neighborly accommodation." *Gulas v. Tirone*, 184 Ohio App.3d 143, 2009-Ohio-5076, 919 N.E.2d 833, ¶ 25 (7th Dist.).

{¶ 20} In this case, the Wietzels claim the Mundys did not adversely use the driveway in question because Country Club/Green Tree permitted Harry Mundy to install and use the driveway. In support of this claim, the Wietzels point to the testimony of James Keys indicating that he approved Harry's building plan. Because the approved building plan included a driveway that cut across Country Club/Green Tree property, the Wietzels contend that, even though Harry's driveway ended up deviating from the building plan, Harry nevertheless had permission to install the driveway on Country Club/Green Tree property.

{¶ 21} The Wietzels, however, ignore the fact that Keys specifically testified that neither he nor any partner of Country Club/Green Tree ever granted Harry permission to install or use the existing driveway. *See* Trial Trans. p. 30-31. Keys also made it clear that no such permission was ever granted to any subsequent owner of the residence. *Id.* at 31. Instead, the record clearly indicates that Harry deviated from the approved building plan and installed a driveway that was not approved by Keys.

{¶ 22} Although the Wietzels argue that the unapproved driveway was a "neighborly accommodation" intended to afford Harry access to his property, the following testimony from Keys indicates otherwise.

Defense Counsel: * * * [T]he easement was going to be over Sugar Valley property * * * but he couldn't do it because this driveway was not in?

James Keys: That's right.

Defense Counsel: So then did you have any discussion with him or what or how he was going to have access; because he's

building his building—his house—and there's no access?

James Keys: I don't believe we did because at that time I was probably pretty well occupied by this referendum.

Defense Counsel: At some time after—during he's building the house or right after I assume you observed this driveway that is now there?

James Keys: At some time I must have. I didn't live out there then. I lived in Kettering at the time.

* * *

Defense Counsel: Well, I assume you found out relatively soon after he moved in that he was using the access…?

James Keys: I hate to admit this but it just completely slipped my mind. I didn't even think about it until this came up.

* * *

Defense Counsel: Would it be fair to say that you knew Harry was going to have a problem with access because that proposed driveway, which is now in, wasn't there?

James Keys: When we sold—when we sold the lot to Harry we were in the midst of filing, or I think we had already had an approval, but had not recorded the plat. And then it took a year—a little over a year—to get it on the ballot on the referendum; so I must say that I probably was

not paying much attention.

Defense Counsel: Okay. Well, would it be fair to say that you were just going to let Harry do—find whatever access he could to his property?

James Keys: I truly believe that with what I see in the drawings and if my memory serves that we had anticipated that he would tie into the easement for lots 1 and 2.

Defense Counsel: Which would have been on…

James Keys: Sugar Valley land.

Defense Counsel: Sugar Valley land; so you were going to let him—kind of accommodate him to let him do that? That's what it sounds like.

James Keys: I don't want to say accommodate him because, frankly, I don't recall.

Trial Trans. p. 39-43.

{¶ 23} The foregoing testimony indicates that the location and continued use of the unapproved driveway was the product of an oversight on the part of Keys, not as a neighborly accommodation. Nothing in the record indicates that Harry had either express or implied permission to install and use the driveway at issue. As a result, the Wietzels' argument that the Mundys did not adversely use the driveway lacks merit. Since there is competent, credible evidence in the record indicating that the Mundys adversely used the driveway for a period of 22 years, the trial court properly tacked on that period of time for purposes of establishing the 21-year possession element of the

Schaffer's adverse possession claim.

{¶ 24} The Wietzels' First Assignment of Error is overruled.

## Second Assignment of Error

{¶ 25} Under their Second Assignment of Error, the Wietzels contend the exclusivity element of adverse possession was not proven by clear and convincing evidence because Mark Schaffer testified that he would not prevent the Wietzels from going "over [the driveway] or even hav[ing] a picnic or play[ing] volleyball on the land around it." *See* Trial Trans. p. 15. Therefore, the Wietzels are essentially arguing that absolute exclusivity is required in order to satisfy the exclusivity element of adverse possession. We disagree.

{¶ 26} The Supreme Court of Ohio recently discussed the exclusivity element in *Koprivec v. Rails-to-Trails of Wayne Cty.*, 153 Ohio St.3d 137, 2018-Ohio-465, 102 N.E.3d 444, and stated the following:

The general rule is that "exclusive possession can be shown by acts that would ordinarily be exercised by an owner in appropriating land to the owner's own use and to the exclusion of others." 16 *Powell on Real Property*, Section 91.06 (2017). "[T]he possessor must use and occupy the land as his own and 'exclude all others from similar rights.' " *Richardson v. Blersch*, 1st Dist. Hamilton No. C-930042, 1994 WL 114301, *3 (Apr. 6, 1994), quoting *Pennsylvania R.R. Co. v. Donovan*, 111 Ohio St. 341, 351, 145 N.E. 479 (1924). Thus, to satisfy the exclusivity requirement, "the claimant's possession need not be absolutely exclusive;

it need only be a type of possession that would characterize an owner's use."   16 *Powell on Real Property*, Section 91.06.

*Koprivec* at ¶ 39.

{¶ 27} This court has also held that "[a]n adverse claimants' possession need not be absolutely exclusive; it need only be the type of possession which would characterize an owner's use.   In other words, the adverse possessor must exclude third parties to the extent that the true owner would do the same."   (Citation omitted.)   *Jennewine v. Heinig*, 2d Dist. Greene No. 95 CA 12, 1995 WL 766005, *2 (Dec. 29, 1995).

{¶ 28} This court's holding in *Alpha Church of Nazarene v. Hoos*, 2d Dist. Greene No. 99CA0036, 1999 WL 980338, *3 (Oct. 29, 1999) also demonstrates that possession does not have to be absolutely exclusive in order to satisfy the exclusivity element of adverse possession.   In *Hoos*, the defendant filed an adverse possession counterclaim against a neighboring Nazarene Church.   *Id.* at *1.   The adverse possession claim involved a gravel road that the defendant used on a daily basis to access his parcel of land.   *Id.* at *3.   The defendant and his family testified that they maintained the gravel road by grading it, patching it, and adding gravel when necessary.   *Id.*   They also removed leaves and snow on the road, and erected a sign that said "Private Drive."   *Id.* At all times, the defendant regarded the gravel road as his own.   *Id.*

{¶ 29} On the other hand, members of the Nazarene Church testified that they used the gravel road to access the church's basement for purposes of social functions that occurred only six to twelve times per year.   *Id.*   The church members would drive down the gravel road and then cut over to the basement door to unload passengers, food, tables, and chairs.   *Id.*   One church member also testified that the church performed no

maintenance on the gravel road.   *Id.*

{¶ 30} On appeal, this court reversed the judgment of the trial court finding that the exclusivity element had not been satisfied.   Although the Nazarene Church members used the gravel road on occasion, we nevertheless held that there was clear and convincing evidence that the defendant had exclusively possessed the property per the standard in *Jennewine*, 2d Dist. Greene No. 95 CA 12, 1995 WL 766005.   *Id.*

{¶ 31} In this case, we also find clear and convincing evidence supporting the exclusivity requirement of adverse possession.   It was undisputed that the driveway in question was the sole means by which the Schaffers accessed the residence.   Mark Schaffer testified that the driveway was used exclusively for his residence and that he used the driveway at least once daily.   Mark also testified that the driveway was only used by others for purposes of deliveries, service calls, or visits by friends and family. Mark further testified that he maintained the driveway by seal coating it every two to three years, filling cracks, shoveling snow, removing leaves, and generally keeping it in good shape.   Mark also maintained the grassy area near the driveway by mowing, weeding, fertilizing, and applying bug preventatives.

{¶ 32} The fact that Mark testified that he would not prevent the Wietzels from going on the driveway or from having a picnic or playing volleyball on the surrounding land did not bar a finding of exclusivity.   We note that Mark also testified that the Wietzels were not invited to use the driveway.   *See* Trial Trans. p. 9.   Therefore, Mark's testimony as a whole indicated that he considered the Wietzels invitees who may be permitted to use the driveway if, for example, they wanted to have a picnic or play volleyball on the surrounding land.   Occasionally permitting others to use property, like how the church

members used the gravel road in *Hoos*, is consistent with the standard that an owner use his land to the exclusion of others. Because absolute exclusivity is not required to satisfy the exclusive possession element of adverse possession, the fact that Mark might occasionally permit the Wietzels to use the driveway did not bar a finding of exclusivity.

{¶ 33} The Wietzels' Second Assignment of Error is overruled.

### Third Assignment of Error

{¶ 34} Under their Third Assignment of Error, the Wietzels contend the trial court's adverse possession ruling was against the manifest weight of the evidence. In support of this claim, the Wietzels incorporate the arguments they raised under their First and Second Assignments of Error and generally allege that the trial court should have concluded that the Schaffers did not satisfy one or more of the elements necessary to establish an adverse possession claim. We disagree.

{¶ 35} In analyzing the Wietzels' First and Second Assignments of Error, we have already determined that there is competent, credible evidence in the record establishing that the Schaffers' possession was adverse and exclusive for a continuous period of 21-years after tacking on the Mundys' ownership period. Therefore, for the reasons outlined above, the Wietzels' claim otherwise lacks merit.

{¶ 36} Upon review, we also find that there is competent, credible evidence in the record supporting the open and notorious elements of adverse possession. " 'To be open, the use of the disputed property must be without attempted concealment.' " *Walls v. Billingsley*, 3d Dist. Allen No. 1-92-100, 1993 WL 135808 (Apr. 28, 1993), quoting *Hindall v. Martinez*, 69 Ohio App.3d 580, 583, 591 N.E.2d 308 (3d Dist.1990). "To be

notorious, the use must be known to some who might reasonably be expected to communicate their knowledge to the owner if he maintained a reasonable degree of supervision over his premises." (Citation omitted.) *Hindall* at 583. "The law presumes that an owner of property knows the condition and status of his land. Thus, an owner is charged with the knowledge that a party is open and notoriously occupying his property where that occupancy is plainly visible to him." (Citation omitted.) *Id.*

**{¶ 37}** In this case, the testimony and evidence presented at trial indicates that the driveway has always been visible from Stewart Road and was not hidden from public view. The testimony also indicated that, before the Schaffers purchased the residence in 2006, the driveway was maintained by the Mundys since the early 1980s when Harry Mundy first had the driveway blacktopped. In addition, Mark Schaffer testified that he continued to maintain the driveway by seal coating it every two to three years, filling cracks, shoveling snow, and removing leaves. Mark also maintained the grassy area surrounding the driveway by mowing, weeding, fertilizing, and applying bug preventatives. Accordingly, we find there was competent, credible evidence in the record supporting the open and notorious elements of adverse possession.

**{¶ 38}** In light of the foregoing, after weighing the evidence and all reasonable inferences, we do not find that the trial court clearly lost its way or created a manifest miscarriage of justice in awarding the Schaffers title to the disputed property by adverse possession. The trial court's judgment was therefore not against the manifest weight of the evidence.

**{¶ 39}** The Wietzels' Third Assignment of Error is overruled.

## Conclusion

**{¶ 40}** Having overruled all assignments of error raised by the Wietzels, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

Charles F. Allbery, III
Michael R. Eckhart
Hon. Michael A. Buckwalter